## Woodburn's Estate. Ritchey's Appeal. Woodburn's Appeal.

*Trusts and trustees—Effect of widow's election against will.*

Where the object of a testator is to secure to his widow the payment of a certain proportion of the income of his whole estate during her life, and he creates a trust for this object, the widow's election to take against the will terminates the trust.

Testator gave to his widow " the use of a one third interest " in his estate. The " use of the remaining two thirds " was to be divided equally among his five children, or their heirs, during the lifetime of the widow, " to be paid yearly to their guardian or on maturity to each one individually," and on the death of the widow the property was to be divided equally among the five children. Some of the children were minors at the time of testator's death. The widow elected to take against the will.

*Held,* that, at the widow's election to claim under the intestate laws, the trust terminated and the residue of the estate became immediately vested in possession in the children.

The minority of some of the heirs was immaterial. The trust was ended, not because the beneficiaries were sui juris and desired it, but because the testator's purpose in creating the trust to protect the widow was no longer subserved by its continuance. Coover's Appeal, 74 Pa. 143, applied.

Argued Oct. 19, 1892. Appeals, Nos. 222 and 223, Oct. T., 1892, by Henry S. Ritchey, guardian of minor children of Samuel Woodburn, deceased, and John Woodburn et al., from decree of O. C. Washington Co., Aug. T., 1889, No. 48, distributing estate of Samuel Woodburn, deceased. Before STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Audit of executor's account.

From the report of the auditor, J. F. McFarland, it appeared that Samuel Woodburn died April 1, 1889, leaving a will by which he devised and bequeathed his estate as follows:

" 2. I do give and bequeath to my wife (Mary Woodburn) the use of a one third ($\frac{1}{3}$) interest in my estate (property personal and real estate) to be paid to her yearly by my executors hereinafter named.

" 3. The use of the remaining two thirds ($\frac{2}{3}$) I direct to be equally divided between my five children (John, William, Minnie, Samuel and Susannah) or their lawful heirs, during the lifetime of my wife (Mary Woodburn) to be paid yearly to their guardian or on maturity to each one individually.

" 4. I further devise that at the death of my wife, my property be equally divided between my five (5) children or their lawful heirs.

" 5. I further declare it to be my will that James M. McMannis, of Taylorstown, Pa., and Wallace M. Mustard, of Middletown, Pa., act as the executors of this my last will and testament."

William, Minnie, Samuel and Susannah Woodburn were minors at the date of the audit in October, 1889. William came of age before the appeal was taken. The widow elected to take against the will. See Woodburn's Est., 138 Pa. 606.

Before the auditor it was claimed that upon the election of the widow to take against her husband's will, the trust created by the will was terminated, and the children were entitled to immediate possession of two thirds of the fund. The auditor

refused to allow the claim, and awarded the fund to the executors as trustees to hold during the lifetime of the widow.

On exceptions to the auditor's report the court held, in an opinion by McILVAINE, P. J.:

" That the testator intended to create an active trust and that his estate should be controlled by his executors until the death of the widow, the income thereof to be paid by them to the legatees named in the will, subject to the rights of the widow under the intestate laws of the commonwealth, she having elected not to take under her deceased husband's will."

*Errors assigned* in each appeal were in effect to the ruling of the court as above, and the decree of distribution, quoting them.

*T. F. Birch*, for appellants.—The cases are numerous where trusts analogous to this one have been executed: Freyvogle v. Hughes, 56 Pa. 228 ; Kay v. Scates, 37 Pa. 31 ; Megargee v. Naglee, 64 Pa. 216 ; McKee v. McKinley, 33 Pa. 92 ; Bush's Ap., 33 Pa. 85.   An estate given to a trustee endures no longer than the thing to be secured by the trust demands : Coover's Ap., 74 Pa. 143.   Bequests subordinate to a life estate in the testator's widow, or payment of which is postponed by the will until her death, become presently payable upon her election to take under the intestate laws : Ferguson's Est., 138 Pa. 208 ; Vance's Est., 141 Pa. 201.

*T. Jeff. Duncan*, *John Aiken* with him, for appellants.—Testator's intent should govern: Biddle's Ap., 99 Pa. 532 ; Middlesworth's Admr. v. Blackmore, 74 Pa. 418 ; Miller's Ap., 113 Pa. 466 ; Schott's Est., 78 Pa. 42 ; Baker and Wheeler's Ap., 115 Pa. 593 ; Reck's Ap., 78 Pa. 435 ; Sponsler's Ap., 107 Pa. 100.

The use of money is nothing more than the interest or dividends which may be enjoyed by the usufruct without diminishing the principal : Holman's Ap., 24 Pa. 178.

Appellants can have the fund by giving security to protect the rights of the remainder-men : Purd. Dig., 554, pl. 228–229 ; Holman's Ap., 24 Pa. 178 ; German v. German, 27 Pa. 118 ; Kinnard v. Kinnard, 5 Wa. 110 ; Eichelberger v. Barnetz, 17 S. & R. 294.

The language of the will is explicit and creates a life estate

only, during the life of the widow, The remaindermen are
clearly pointed out as the testator's " five children or their law-
ful heirs." An active, special trust is created in the appellees
to continue in force until the widow's death: Bentley v. Kauff-
man, 86 Pa. 101 ; Dodson v. Ball, 60 Pa. 496 ; Anck's Est., 11
Phila. 118 ; Sheets' Est., 52 Pa. 262–266 ; Emma Myer's Ap.,
49 Pa. 112 ; Craige's Est., 6 W. N. 318–320.

OPINION BY MR. JUSTICE MITCHELL, November 7, 1892.

The single question in both these appeals is ruled by Coover's
Appeal, 74 Pa. 143. The testator gave to his widow "the use of
a one third interest " in his estate, that is, not the income of one
third but one third of the income of the whole. To ascertain
and secure such third the whole estate had to be kept together.
Such was undoubtedly the testator's intention, and he provided
for it by a trust. But outside of this provision for his widow,
the whole beneficial enjoyment of his estate is given immedi-
ately to his children. The " use of the remaining two thirds "
is to be divided among them, or their heirs, during the lifetime
of the widow, " to be paid yearly to their guardian, or on ma-
turity to each one individually," and on the death of the widow
the " property " is to be divided equally among them. There
is no interest or right, present or future, in any one else. The
entire beneficial interest in property is the property itself, and
when it is given but possession is postponed, courts of equity
will look to the purpose of the postponement. The testator's
purpose is apparent. It is to preserve the property together
under such control as to secure one third of the income to the
widow. No one else is benefited in any way present or future
by this provision, and there is no other purpose for it discerni-
ble in the will, or suggested by the testator's circumstances.
Even the frequent intent to keep the estate together during
the minority of the children is wanting, for the distribution is
to take place on the death of the widow without reference to
the minority of any of the children. When therefore the tes-
tator's only discoverable purpose failed or was superseded by
the widow's election to take against the will, the trust estab-
lished only to serve that purpose became useless, and ended.
In its effect on the testator's scheme, the widow's election was
equivalent to her death, and the coming of the remainders into

possession was accelerated precisely as in Coover's Appeal. The case is even stronger than Coover's, for in that there was room for doubt whether there were not contingent remainders with a claim for preservation. Here the remainders are vested, and the direction to pay to the lawful heirs is only in succession to deceased children, and inserted to prevent the implication of a lapse in case of death during the continuance of the life estate.

The argument that the words of the testator direct that the property shall not be divided until the widow's death, cannot prevail, for if it proved anything it would prove too much. In all such cases the letter of the will has to be set aside, because by change of circumstances adherence to the letter would defeat the real intent. If any intent were apparent which the letter of testator's language could be seen to subserve, the letter would be adhered to. There is a presumption in its favor. But where the only intent to be gathered is one that makes literal compliance either repugnant or superfluous, the letter must give way. So it did in Coover's Appeal, and so it must in this and all similar cases.

The minority of some of the heirs is immaterial. As already shown, the vesting in possession of the children is to be without reference to their minority. The trust is ended not because the beneficiaries are sui juris and desire it, but because the testator's purpose in creating it is no longer subserved by its continuance.

We are therefore of opinion that upon the widow's election to claim her right under the law, the other two thirds of the estate became immediately vested in possession in the children, and their shares of the fund now in controversy were payable to them and their guardian.

Decree reversed and record remitted for decree of distribution in accordance herewith.