## ISAAC J. CROSSAN, JR., et al., Appellants, v. RUTH C. CROSSAN et al., Respondents.

### In Banc, May 13, 1924.

1. **WILL: Life Estate to Widow: Remainder Upon Condition: Renunciation: Acceleration of Remainder.** Where the will gave testator's wife a life estate in city property and after her death to two daughters, "provided they shall well and tenderly care for my said wife during her declining years; otherwise, to go to all my then living children, share and share alike," the devise to the two daughters was upon the sole condition that they render to their mother personal care and attention, and that condition was not affected, nor were their remainders accelerated, by her renunciation of the will, but they will continue unchanged until the widow's death, at which time the two daughters will take the title, if they have performed the condition, but otherwise they will not take it. The renunciation of the will destroyed the life estate, and the remainders as such, but did not affect the substance of the devise to the daughters or change the condition upon which they were to take the title, or convert the contingent remainders given to them into vested remainders, or affect the devise over in case they fail to perform the condition.

   *Held*, by WOODSON, J., that the widow by renouncing the will waived the condition upon which the daughters were to acquire the title, which was a condition personal to herself, but is estopped to demand its performance by destroying the particular estate upon which their remainders were made to rest.

2. ——: **Renunciation: Partition: Postponement.** Land cannot be partitioned contrary to the intention of the testator as expressed in his will. A will giving to testator's wife "one-third of all income accruing" from certain farm lands "of whatever kind or nature during her natural lifetime" and "the remaining two-thirds of the accrued income" to his children, and then declaring that "after the demise of my said wife it is my will that all of the residue or remainder of my estate be equally divided, share and share alike, between my children above enumerated," served to postpone partition until the widow's death, and that restriction was not removed or altered by the widow's renunciation of the will, but nullified the will as to her alone. The title of the land was not by the will in any wise made dependent upon the estate the widow takes, and her

Crossan v. Crossan.

renunciation did not remove the restrictions deferring the vesting of the title in the children until her death, and therefore there can be no partition during her life.

3. ———: ———: **Dower.**  Where the widow renounces the will, which defers the vesting of the title until her death and therefore prevents partition among the devisees during her lifetime, an assignment of dower to her in kind may nevertheless be made.

Headnotes 1 and 2:   **Wills,** 40 Cyc. 1993.   Headnote 3:   **Wills,** 40 Cyc. 1989.

Appeal from Nodaway Circuit Court.—*Hon. John M. Dawson,* Judge.

REVERSED AND REMANDED.

*Wright & Ford* for plaintiffs.

(1)   The whole scheme and purpose of the will was to provide for the wife.   By her renunciation the scheme and purpose of the testator was defeated and the will rendered a nullity.   Finnell v. Finnell, 80 Kans. 730, 18 Ann. Cas. 471.   (2)   The estate in remainder being a common-law remainder must have a particular estate to support it, and must take effect in possession at the instant of the termination of the life estate, else it fails for want of a particular estate to support it.   40th Cyc. 1682; Ryan v. Monaghan, 42 S. W. 144; Lewin v. Bell, 120 N. E. 633.   (3)   The remainder being contingent and the contingency being a condition precedent and it being impossible to perform the condition prior to the death of the mother, the life tenant, the estate in remainder is not accelerated by the termination of the life estate, during the life of the mother.   Blatchford v. Newberry, 99 Ill. 11; Slocum v. Hagaman, 52 N. E. 332; Sawyer v. Freeman, 37 N. E. 942.   (4)   The farm land being incapable of division in kind without great prejudice to the owners, the heirs were entitled to have the whole tract sold, including the dower interest of the widow, and the present value of the widow's dower paid to her in money, and the balance distributed to the heirs in accordance with their respective interests.   Secs. 1995, 2026, 2047, R. S. 1919.

*Shinnabargar, Blagg & Ellison* for defendants.

(1) The widow's renunciation of the will nullified the will only as to her, and left the same operative and binding as to the other legatees and devisees and as regards all provisions save those in favor of the widow. Sec. 329, R. S. 1919; Castleman v. Castleman, 184 Mo. 432, 444; Lilly v. Menke, 126 Mo. 190, 210; In re Grobe's Estate, 165 N. W. 254; Pittman v. Pittman, 81 Kan. 643, 27 L. R. A. (N. S.) 602; In re Reynolds Estate, 138 N. W. 1019. (2) The meaning and effect of the will is to be determined by ascertaining the intent of the testator as reflected therein. Sec. 555, R. S. 1919; Kerens v. Union Trust Co., 283 Mo. 601, 612; Hartnett v. Langan, 282 Mo. 471, 493; Matthews v. Van Cleve, 282 Mo. 19, 30; Wetzel v. Hecht, 281 Mo. 610, 614; Gibson v. Gibson, 280 Mo. 519, 529; Deacon v. Union Trust Co., 271 Mo. 669. (3) The will contemplates that the land of the testator shall not be sold before the death of his widow; that the estate shall be kept together and the "income" paid as directed therein. Such being the case, the land cannot be partitioned until the date fixed by the will—the time of the widow's death. Sec. 2005, R. S. 1919; Gibson v. Gibson, 280 Mo. 519, 529; Deacon v. Union Trust Co., 271 Mo. 687; Hill v. Hill, 261 Mo. 55; Barnard v. Keathley, 230 Mo. 209, 224; Stewart v. Jones, 219 Mo. 614, 636; Peterson v. Damonde, 98 Neb. 370, 14 A. L. R. 1238. (4) The renunciation of the will by the widow could not accelerate the operation of the fourth clause of the will (providing for a division of the estate "after the demise" of the widow) since the intention of the testator exhibited in the will was that the estate should be kept together until after the widow had died. Stewart v. Jones, 219 Mo. 639; 40 Cyc. 2093; Sawyer v. Freeman, 161 Mass. 543; Brandenburg v. Thorndike, 139 Mass. 102; Hinkley v. House of Refuge, 40 Md. 461, 17 Am. Rep. 617; Holdren v. Holdren, 78 Ohio St., 276, 18 L. R. A. (N. S.) 272; Hamlin v. Thomas, 126 Pa. St. 20; Fowler v. Samuel, 257 Ill. 30, Ann. Cas. 1914 A. 854; Lowell v. Town of Charlestown, 66 N. H. 584; Blatchford v. Newberry, 99 Ill. 1, 47; Wakefield v. Wake-

field, 256 Ill. 296, Ann. Cas. 1913E. 414, 422; Hauk v. Mc-
Comas, 98 Ind. 460. (5) There can be no acceleration of
the operation of this fourth clause of the will as to the
farm land involved, because no life estate and remainder
in it are devised by the will. The doctrine of acceleration
applies only when there is a particular estate which has
terminated. Swan v. Austrell, 253 Fed. 807, 811; Swan v.
Austrell, 257 Fed. 870; Swan v. Austrell, 261 Fed. 465,
469; Toombs v. Spratlin, 127 Ga. 762, 773. (6) It is true
that the renunciation of the will by the widow destroys
her life estate in the residence property given in the first
clause of the will, but it did not operate to deprive the
daughters of their contingent interest therein, regardless
of whether this clause be considered as creating a con-
tingent remainder or an executory devise; and the finding
and decree of the trial court on this point was correct.
21 C. J. 1005; Barkhoefer v. Barkhoefer, 204 S. W. 906;
Baptist Female Seminary v. Borden, 132 N. C. 476;
Hank v. McComas, 98 Ind. 460; Blatchford v. Newberry,
99 Ill. 61; Swan v. Austrell, 261 Fed. 469. (7) The de-
cree of the trial court was proper in providing for the as-
signment to the widow in kind of her dower. Secs. 1995,
2016, 2017, 2026, 2027, R. S. 1919.

JAMES T. BLAIR, J.—The cause was heard in Di-
vision and thereafter transferred to Court in Banc and
re-argued. This is a proceeding to construe the will of
Isaac J. Crossan, and for partition. The parties to the
case are the widow and descendants of testator, a tenant
on part of the land involved, and the administrator c. t. a.

Isaac J. Crossan owned a residence in Maryville and
some 300 acres of Nodaway County farm land and per-
sonalty amounting to $4000. He died in August, 1922,
and his will, sought to be construed, reads as follows:

"I, Isaac J. Crossan, of the County of Nodaway and
State of Missouri, aged seventy-six years, being of sound
mind, do make and publish this my last will and testa-
ment.

"First,—I give and bequeath to my beloved wife, Ruth C. Crossan, our home here in Maryville, Nodaway County, Missouri, together with all household goods therein contained, situated on lots seven and eight (7 and 8) in block eleven (11) Northwest Addition to Maryville, during her natural life. After which to revert to my daughters, Ida J. Tindall and Rebecca L. Onstott, provided they shall well and tenderly care for my said wife, Ruth C. Crossan, during her declining years, otherwise to go to all of my then living children share and share alike.

"Second,—I give and bequeath to my said wife, Ruth C. Crossan, one-third of all income accruing from my estate (outside of the home place as above) of whatever kind or nature, during her natural life.

"Third,—It is my will that the remaining two-thirds of accrued income shall be divided equally between all my children, to-wit: Ida J. Tindall, Rebecca L. Onstott, James A. Crossan, Isaac J. Crossan, Jr., Edwin C. Crossan, Levi G. Crossan, Gilbert R. Crossan and Harry G. Crossan.

"Fourth,—After the demise of my said wife it is my will that all of the residue or remainder of my estate, be divided equally share and share alike between my children as above enumerated.

"Fifth,—I hereby appoint my son Edwin C. Crossan the executor of this my last will and testament, and request that he be permitted to serve without bond, hereby revoking all other wills by me made. And I empower my executor to sell realty, collect all debts to me owing or if by him thought judicious compromise in the collection of the same accepting even less than what might be due.

"In witness whereof I have subscribed my name hereunto this 23rd day of July, 1917."

The will was probated, and in due time Ruth Crossan, the widow of Isaac J., filed her renunciation of the will and elected to take under the statute. The personalty was more than ample to pay all debts of the estate.

Since the death of Isaac J. Crossan, Rebecca L. Onstott has been living with her mother in the town property and has been caring for her during this litigation under a temporary arrangement whereby she pays rent equal to that just previously paid by other tenants then in possession, and Ruth Crossan pays a monthly sum to her in accordance with what the testimony tended to show was the idea of Isaac J. Crossan concerning the manner in which his will should be carried out. Mrs. Tindall has been ill, and Mrs. Onstott has been looking after the mother for both of them under an agreement between them. On cross-examination Mrs. Onstott was asked whether she hadn't said she would have to be paid for taking care of her mother. She answered that she had said she would have to be paid more than the house was worth because her father told her to do it. "He told me just what he meant by this will. Q. Did you say that you would not take this house and take care of your mother but that you would have to be paid for it, in addition, for taking care of your mother? A. Yes, I have —for the house alone I won't do it."

The trial court construed the will to give the widow a life estate in the residence property with a remainder in Mrs. Onstott and Mrs. Tindall contingent upon their "tenderly caring for their mother during her declining years;" that the widow's renunciation of the will did not destroy this contingent interest of the daughters, and that the fee is "vested in the heirs at law of Isaac J. Crossan, Sr., subject to the dower right of the wife, Ruth C. Crossan, but subject to be devested out of said heirs at law upon the death of Ruth C. Crossan, provided the said Ida J. Tindall and Rebecca L. Onstott shall have complied" with the condition imposed by the will, which "cannot be determined until the death of the widow." On this holding the court denied partition of the residence property. The court held that the renunciation of the will by the widow accelerated the remainder in the farm land and that it was partitionable for that reason.

303 Mo. Sup.—37

The judgment orders that the widow's dower in the farm lands be set off in kind, and that the part thereof not set off to her be sold and the proceeds distributed to the heirs according to their interests as defined in the decree. Both plaintiffs, and defendants James A. Crossan, Ida J. Tindall, Rebecca L. Onstott and Levi G. Crossan, appealed.

Plaintiffs contend (1) that the will was built around a purpose to provide for the wife in such manner that her renunciation of it defeated that purpose and "rendered the will a nullity;" (2) the devise to the two daughters is a contingent remainder and failed when the widow renounced the life estate given her by the will; (3) that, in any event, the farm land was incapable of division without great prejudice, and the order for its sale was right.

Defendants insist that (1) the fourth clause of the will forbids partition until the widow's death, and (2) the renunciation of the will by the widow did not accelerate the right to partition.

I.   The first paragraph of the will, in terms, gives the widow a life estate in the town property and then provides that at her death it shall "revert to my daughters . . . provided they shall well and tenderly care for my said wife during her declining years, otherwise to go to all of of my then living children share and share alike." It is not contended the care the testator intended to secure for his widow from his daughters included financial support. His will makes other and ample provision for that. It was doubtless personal care and attention, such as a daughter is well fitted to give her mother, that testator desired to secure for his widow during the remainder of her life. This was quite as essential in case she renounced the will as if she had accepted its provisions. At the time the will was signed, as well as at the time of testator's death, the right of a

*[margin note: Renunciation: Effect Upon Remainders.]*

widow to renounce the provisions of her husband's will
and take under the statute was established in the law of
this State. The will must be considered to have been
drawn with this in mind. Had testator desired to con-
dition the continued validity of the contingent devise to
his daughters, in paragraph "first" of the will, upon the
failure of his wife to renounce the will, he could have
made that clear with a word. What he did was to use
language which apparently gives the daughters the resi-
dence property in any event on the death of their mother
on the sole condition that they shall "well and tenderly"
care for her during her remaining years. The general
rule is that in case a will gives the widow a life estate
with remainder to designated persons, the widow's re-
nunciation of the will and consequent destruction of the
life estate will accelerate the remainders; but no such
acceleration occurs in a case in which it would defeat the
expressed intention of the testator with respect to the
remainder itself. This doctrine of acceleration is "found-
ed on the presumed intention of the testator that the re-
mainderman should take on the failure of the previous
estate, notwithstanding the prior donee may be still
alive. And it is applied in promotion of the assumed
intention of the testator and not in defeat of his inten-
tion; and when it is the evident intention of the testator
that the remainder should not take effect till the ex-
piration of the life of the prior donee, the remainder will
not be accelerated." [Fowler v. Samuel, 257 Ill. 30;
Compton v. Rixey's Exrs., 124 Va. 548.] In this case the
devise to the daughters is to vest upon a condition of
such character that neither it nor its performance in
any way depends upon the continuance of the life estate
until the widow's death. Their right is not to vest un-
til their mother's death, and is then to vest, if they have
given her the required care, without regard to what
happens to the life estate in the meantime. This is the
language of the will. The renunciation ended the wid-
ow's life estate, but had no effect upon devises to others

which do not depend upon the acceptance of the will by her. It is suggested that the devise to the daughters was a contingent remainder, and that the nullification of the particular estate destroyed the remainder. That is true. It destroyed the remainder, as such. It did not destroy the devise to the daughters, as such. When the renunciation of the will ended the life estate, then the residence property stood as if testator had never provided for a life estate for his wife, but had first devised the residence property to his daughters upon the same condition as now appears in the will. It is not contended he could not have made such provision originally. In that case the title to the residence would have descended to the heirs, subject to the vestiture of the whole in the daughters at the mother's death on the performance by them of the condition imposed by the will. The change wrought by the renunciation merely changes the technical name given the devise to the daughters, but does not affect the substance of that devise, or defeat the intent of the testator in imposing upon his daughters the condition named in the will. [Castleman v. Castleman, 184 Mo. l. c. 444; Lilly v. Menke, 126 Mo. l. c. 210.] The trial court was right in denying partition of the residence property.

II. The trial court ordered partition of the residue of the farm land after the widow's dower had been set off. Defendants question this ruling. Land devised cannot be partitioned "contrary to the intention of the testator, expressed" in his will. [Sec. 2005, R. S. 1919.] With respect to the farm land, the will gives the widow no life estate in the ordinary terms used for such purpose, but does give her "one-third of all income accruing from my estate (outside of the home place as above) of whatever kind or nature during her natural lifetime," and then proceeds: "It is my will that the remaining two-thirds of accrued *income* shall be divided equally between all my children,"

*Partition Contrary to Will.*

naming them, and *"after the demise* of my said wife it is my will that all of the residue or remainder of my estate be divided equally, *share and share alike,* between my children as above enumerated.*"* It is apparent these provisions would have served, without question, to postpone partition if the widow had not renounced the will. They evidence an intention to hold the estate together until her death. Nor is the whole provision for her benefit. Two-thirds of the "income" until her death are to go to testator's children, and the division is expressly postponed until the *death* of Ruth Crossan. The renunciation of the widow nullifies the will as to her alone. It does not defeat rights of other devisees, as the cases already cited show. It does not remove restrictions which defer the vesting of full title in other devisees, which title in no wise depended upon the estate the widow takes. The intent of the testator to defer partition of the farm lands is not defeated by her renunciation which leaves the parties, in so far as necessity for such partition is concerned, in much the same condition as that in which they would have been had the the widow not renounced the will. The judgment for partition must be reversed. [Stewart v. Jones, 219 Mo. l. c. 639, et seq.; Gibson v. Gibson, 280 Mo. l. c. 529; Hill v. Hill, 261 Mo. l. c. 60.]

III. The assignment of dower in kind was right though that question is no longer important. The question whether the daughters have complied with the condition upon which they are to take the residence property is not determinable upon this record.

Compliance With Condition. What Mrs. Onstott *said* on this hearing is not important. It related to the future. What will prove important doubtless is what she and Mrs. Tindall shall have *done* when the time to determine whether they have complied with the condition in the will shall have arrived. The suggestion that Ruth Crossan in renouncing the will renounced the "tender care" with which testator attempted to surround her does not

justify the conclusion at this time which is proposed. The devise to the daughters was not affected by the widow's renunciation. They may, nevertheless, comply with the condition, and it is on such compliance, in legal effect, that their rights in the residence will depend.

The judgment is reversed and the cause remanded for proceedings not out of record with this opinion. All concur; *Woodson, J.,* in result, in separate opinion.

WOODSON, J. (concurring).—The plaintiff instituted this suit in the Circuit Court of Nodaway County against the defendants, to construe the will of Isaac J. Crossan, and to partition certain lands held by him.

The trial resulted in certain findings for each of the parties, and the decree on certain issues was for the plaintiffs, and for the defendants upon others. In due time and proper form both of said parties appealed the case to this court.

There is no dispute as to the facts of the case. The testator's estate consisted chiefly of farm lands in Nodaway County, and a home in Maryville, in said county, particularly described as Lots Seven and Eight in Block Eleven of Northwest Addition to Maryville. Testator died in August, 1920, and by the provisions of his will he appointed his son Edwin C. Crossan the executor of his will. The will was duly probated and the executor began the administration of the estate. Two months later the executor died, and John F. Roelofson was duly appointed administrator with the will annexed, in his stead.

In due time, Ruth Crossan, the widow of the said Isaac J. Crossan, renounced the provisions of the will of the said Isaac J. Crossan and elected to take under the statute as his widow. The effect of this renunciation upon the will of Isaac J. Crossan is the principal question to be considered in this proceeding. While

the home in Maryville is spoken of as the home of Isaac
J. Crossan in the will, he and his wife, the said Ruth C.
Crossan, had removed therefrom about two years before
his death, and the said home after the time of their re-
moval had been rented and was in the possession of
and occupied by tenants at the time of the death of the
said Isaac J. Crossan. After the death of the said Isaac
J. Crossan and as soon as possession of said property in
Maryville could be obtained from the tenants then occupy-
ing the same, the said widow, Ruth C. Crossan, returned
to her former home, and since said time has been living
in said home in Maryville.

The most casual reading of the will discloses that
the sole object of the testator in making a will was to
provide for his widow, the said Ruth C. Crossan. The
will makes no change in the course of descent and dis-
tribution from that provided in the statute, except in
respect to the widow, or for her benefit. By the first
paragraph of his will, he disposes of the house and lots
in the city of Maryville, in the following manner:

"First. I give and bequeath to my beloved wife,
Ruth C. Crossan, our home here in Maryville, Nodaway
County, Missouri, together with all household goods
therein contained, situate on Lots seven (7) and eight (8)
in Block eleven (11), Northwest Addition to Maryville,
during her natural lifetime, after which to revert to my
daughters, Ida J. Tindall and Rebecca L. Onstott, pro-
vided they shall well and tenderly care for my said wife
Ruth C. Crossan, during her declining years, otherwise
to go to all my then living children, share and share
alike."

It was conceded at the trial that this paragraph of
the will gave the widow a life estate in this property,
and Ida J. Tindall and Rebecca L. Onstott a conditional
remainder. It was further conceded that the contingen-
cy upon the happening of which the remainder was to
become vested in possession was a condition precedent.

The widow in due time renounced the provisions of the will, and one of the questions for consideration is the effect of the renunciation of the widow and the consequent termination of the life estate on the contingent remainder of the said Ida J. Tindall and Rebecca L. Onstott. It is the contention of the plaintiffs that as the particular estate was terminated before the condition upon which the remainder was to vest was performed, the estate in remainder failed, in having no particular estate to support it.

The trial court held that though the life estate terminated and the title to the property became vested in the heirs at law, this title, so vested in the said heirs, was liable to be devested out of them and vested in the remaindermen by the performance of the condition, and that the contingent remainder so vested in the daughters by this clause of the will needed no particular estate to support it.

I will insert the rulings of the trial court upon the various questions as they arose, in connection with the facts, as they appear as the trial progressed, which will clearly show the view of the law applicable to the case. The court says:

"The court in considering the said will as above set forth in connection with the renunciation of the widow, construes the first clause of the will as being a devise of the home place, Lots seven and eight in Block Eleven Northwest Addition to Maryville, to the widow, Ruth C. Crossan, for and during her natural life, with the remainder to the daughters, Ida J. Tindall and Rebecca L. Onstott; that the remainder is a contingent remainder, and has to vest in the daughters at the death of Ruth C. Crossan, provided they tenderly care for the mother during her declining years; that the devise of this remainder is in the nature of compensation to them for proper care and attention which the mother will require for her physical comfort and welfare and which the daughters are better fitted to give to the mother, and

that it was the intention of the testator that they should receive this compensation, if they performed the conditions, regardless of whether the mother accepted the provisions of the will as made for her or not, and the court holds, as a matter of law, that the renunciation of the widow and consequent termination of the life estate vested in her by the will, did not destroy this contingent remainder of the daughters and that the fee is vested in the heirs at law of Isaac J. Crossan, Sr., subject to the dower right of the wife, Ruth C. Crossan, but subject to be vested out of the said heirs at law upon the death of Ruth C. Crossan, provided the said Ida J. Tindall and Rebecca L. Onstott shall have complied with the conditions imposed by the first clause of said will, and that by reason of the contingent character of the interest of the various parties in and to said lots, the interest cannot be determined until the death of the said Ruth C. Crossan, and partition therefore cannot be had of the said home place, referred to as Lots seven and eight.''

While the said Rebecca L. Onstott has been caring for the mother in the home since the death of the father, she is not caring for the mother in pursuance of and under the provisions in said will contained, but is receiving compensation for her services in so caring for the mother. She declined to care for the mother in consideration of the remainder in said property, as provided in said will, but required larger and additional compensation, and is now receiving the same.    On cross-examination, she stated:

''Q.    I will ask you then, if you did not say in substance that you would not take this house and take care of your mother and that you would have to be paid for taking care of your mother?  A.    I said I would have to be paid more than the house was worth, because my father told me to do it.  He told me just what he meant by this will.

''Q.    Did you say that you would not take this house and take care of your mother, but that you would have to

be paid for it, in addition for taking care of your mother? A. Yes, I have; for the house alone, I won't do it.''

The paragraphs of the will dealing with the farm lands are as follows:

''Second. I give and bequeath to my said wife, Ruth C. Crossan, one-third of all income accruing from my estate (outside of the home place as above) of whatever kind or nature during her natural lifetime.

''Third. It is my will that the remaining two-thirds of accrued income shall be divided equally between all of my children, to-wit: Ida J. Tindall, Rebecca L. Onstott, James A. Crossan, Isaac J. Crossan, Jr., Edwin C. Crossan, Levi G. Crossan, Gilbert R. Crossan and Harry G. Crossan.

''Fourth. After the demise of my said wife, it is my will that all of the residue or remainder of my estate be divided equally, share and share alike, between my children as above enumerated.''

It is the contention of the plaintiffs that the interests of the children in said lands are not affected by the will, save as those interests are affected by the provision for the widow in the second clause of the will, and that as the renunciation of the widow practically destroys the effect of the second paragraph of the will, the third and fourth paragraphs fall also, and the title of the lands is the same as it would have been had there been no will.

We do not understand that there is much dispute on this point, and so we repeat that there is not much question about the right to partition of the farm lands, the only question being the effect of the widow's right of dower. As the facts are few and simple, as the principal dispute arises from the effect of the renunciation of the widow on the contingent remainder in the city property and the effect of her dower right on the partition of the farm lands, we do not deem a further statement of the facts to be necessary.

I.   It must be apparent that the chief legal proposition in this case hinges upon this contention of counsel for plaintiffs.  "It is the contention of plaintiffs that as the particular estate was terminated before the condition upon which the remainder was to vest was performed, the estate in remainder failed, it having no particular estate to support it."

**Renunciation of Will: Waiver and Estoppel.**

Counsel for defendants meet the contention of plaintiffs by insisting that "the widow's renunciation of the will nullified the will only as to her, and left the same operative and binding as to the other legatees and devisees and as regards all provisions save those in favor of the widow."

It seems to me a complete answer to this contention is found in the fact that when the widow elected to renounce the will, she thereby also waived the right of demanding the personal services of Ida J. Tindall and Rebecca I. Onstott to attend and care for her during her declining days, which the will required of them, as a condition precedent to their acquiring the title to the remainder in the home in Maryville.  Clearly this condition was imposed upon the daughters for the personal benefit of the mother, and she being *sui juris* I see no earthly reason why she could not waive the performance of the condition, either in express terms or by necessary implication, as she did in this case, by renouncing the will and thereby destroy the particular estate, and prevent a literal compliance with the terms of the conditions; but be that true or not, if she still insists upon the daughters performing the services mentioned in the will, and if she is legally entitled to them, then surely justice, equity and good morals should not require them to perform those services, and at the same time permit the mother to do an act which would destroy the compensation they were to receive for their performance.

My opinion is that the mother either waived the right of the performance of the services, as before stated,

or she should be estopped from demanding the services, after she has destroyed the particular estate upon which their compensation rested.

The right and justice of the situation is perfectly clear to my mind, and that is the renunciation of the will destroyed the particular estate, and that same act accelerated or hastened, and caused, the remainder to vest *instanter*, and therefore it needed no particular estate to support it. I think there can be no doubt but what that was the effect of the acts of the parties done in the premise.

Under this view of the case we are of the opinion that the title to the remainder in and to the home vested in and became the property of the two daughters, the enjoyment of which of course is postponed until their mother's death.

II. Counsel for defendants contend that the trial court erred in holding that the widow's renunciation of the will accelerated the operation of the fourth clause of the will, and in directing partition of the land not assigned for dower. If we are correct in the conclusions reached in Paragraph I of this opinion, then I am unable to see in what manner the renunciation of the will could accelerate the performance of paragraph 4 of the will. The renunciation of the will had no effect upon the 4th clause of the will whatever; and by reading said 4th clause of the will, it will be seen that it contemplates that the estate is to be held intact until the death of his wife, after which "it is my will all of the residue or remainder of the estate be divided equally . . . between my children."

We are therefore of the opinion that this part of the judgment was erroneous, and we therefore reverse this part thereof, and remand the cause to the circuit court with directions to enter judgment as here indicated.