Sᴛ. Lᴏᴜɪѕ Uɴɪᴏɴ Tʀᴜѕᴛ Cᴏᴍᴘᴀɴʏ, a Corporation, and Dᴏʀᴏᴛʜʏ Bᴇʏᴇʀ Hᴏꜰꜰᴍᴀɴ, as Trustees Under the Will of Cʜᴀʀʟᴇѕ Kᴇʀɴ, Plaintiffs-Respondents, v. Lᴇɴᴀ Kᴇʀɴ, Iᴅᴀ Bᴇʏᴇʀ, Mᴀʀʏ Kᴇʀɴ, Dᴏʀᴏᴛʜʏ Bᴇʏᴇʀ Hᴏꜰꜰᴍᴀɴ, Iᴅᴀ Vɪʀɢɪɴɪᴀ Mɪᴅᴅʟᴇᴛᴏɴ, Mᴀʀʏ Eʟɪᴢᴀʙᴇᴛʜ Bᴇʏᴇʀ, Defendants-Respondents, Aᴜɢᴜѕᴛᴀ Hᴜʙᴇʀ, Lᴇᴏɴᴏʀᴀ Hᴜʙᴇʀ, by Vɪʀɢɪɴɪᴀ McMᴀʜᴏɴ, Guardian *ad Litem,* Wɪʟʟɪᴀᴍ Hᴜʙᴇʀ, Jʀ., by Vɪʀɢɪɴɪᴀ McMᴀʜᴏɴ, Guardian *ad Litem,* and Vɪʀɢɪʟ Zᴇɪɢʟᴇʀ, Defendants-Appellants.——142 S. W. (2d) 493.

Division One, July 18, 1940.

*Burnett, Stern & Liberman* and *Edwin Grossman* for Augusta Huber and Virginia McMahon, Guardian *ad Litem* for Leonora Huber, and Virginia McMahon, Guardian *ad Litem* for William Huber, Jr.; *Nagel, Kirby, Orrick & Shepley* and *Dwight D. Ingamells* for Virgil Zeigler:

*Edwin C. Luedde* for Ida Beyer, Dorothy Beyer Hoffman, Ida Virginia Middleton and Mary Elizabeth Beyer; *Edwards, Metcalfe & Strong* and *John W. Hoffman* for St. Louis Union Trust Company and Dorothy Beyer Hoffman.

DALTON, C.—This is a suit by the trustees under the will of Charles Kern to secure a construction of the will. From a decree construing the will, certain legatees have appealed.

Charles Kern died June 7, 1933, seized and possessed of real and personal property. By his will his property was left in trust for the benefit of his two sisters, his wife, his daughter by a former marriage, the children of his said daughter, the husband of a deceased daughter, a daughter of his wife by a former marriage, and two of her children. One of the testator's grandchildren and the St. Louis Union Trust Company were named as trustees. The son-in-law, the stepdaughter and the stepdaughter's children are appellants.

The will provides, first, for the payment of debts and funeral expenses; second, bequeaths certain items to the testator's wife; and, third, transfers the balance of testator's property to trustees who are authorized to manage and control the trust estate and "to distribute the entire net income as follows:"

(a)  Provides for the payment of $100 per year, for life to one of testator's sisters. She is now deceased.

(b)  Provides for the payment of $50 per year for life to another of testator's sisters.

(c)  "The remainder of the said net income shall be paid and distributed share and share alike in equal monthly installments unto my wife, Lena Kern, and my daughter, Ida Beyer, for and during the natural life of both, subject to the following qualifications:

"Upon the death of my said wife the corpus of the trust estate and undistributed income shall be held and distributed as follows:"

(1)  Provides that if the beneficiaries named in (a) and (b) are then living the trustees shall reserve a certain portion of the trust estate to provide an income for the payment of these annuities and that the corpus of the trust estate so reserved shall later be distributed as provided in paragraph (2).

(2)  "The residue of the corpus of the trust estate shall be paid over as follows:"

Provides:  (a) special legacies totaling $7000, free from trust, to certain of the testator's grandchildren, if living, otherwise to their then heirs at law; (b) special legacies totaling $6000, free from trust, to testator's stepdaughter, and her two children, if living; and (c) a $5000 legacy, free from trust, to testator's son-in-law, if living.

"The residue thereof, free from trust, to my daughter, Ida Beyer; but if my said daughter shall not be living upon the termination of this trust as hereinbefore provided, then the residue of the corpus of the trust estate and undistributed income shall be retained in trust for the equal use and benefit of her children, Ida Virginia Beyer, Mary Elizabeth Beyer, and Dorothy Beyer, until they attain the age of twenty-five (25) years respectively, at which time they shall

receive their respective equal shares in the corpus of the trust estate and undistributed income, free from trust.

"In the event my daughter, Ida Beyer, should predecease my wife and myself, then her one-half ($\frac{1}{2}$) share of the income of said trust estate shall go to her children as provided next above until such time as they shall become entitled to all the residue of income and corpus of the said trust estate."

The will next provides for the education and maintenance, during minority, of these grandchildren out of said income and, thereafter, for the distribution of the income to them until they are 25 years old.

"If any of the beneficiaries shall die under the age of twenty-five (25) years, then the share of such deceased beneficiary in the corpus of the trust estate and undistributed income shall be paid over and distributed unto her descendants per stirpes, free from trust; or if she shall leave no descendants her surviving, then unto the other children of my said daughter herein named who then may be living, and unto the descendants per stirpes of any deceased child of my said daughter who may have died prior to such time, the shares of the children of my said daughter to be retained in trust until they attain the age of twenty-five (25) years respectively, as hereinbefore provided." Other provisions of the will are unimportant here.

▮ The widow renounced the will, and elected to take a child's part under the statute, and distribution of her share, to-wit, one-half of the net estate, was made to her. [Sec. 323, R. S. 1929, 1 Mo. Stat. Ann. 208.] The administration has been completed and the remaining net assets have been paid to the trustees.

The question first presented is whether the renunciation of the will by the widow, and her election to take under the statute, was equivalent to her death, as far as the will is concerned, thereby accelerating the time of payment of legacies and terminating the trust for the daughter so as to make the specific bequests and residue, under subdivision Third (c) (2) of the will, payable as of the time of the renunciation rather than of the widow's death.

The trial court found that it was the intent of the testator, as expressed in the language of the will, that the trust provided for the daughter should be continued until the death of the widow notwithstanding the renunciation of the will by the widow and her election to take under the provisions of the statute; that the trustees should pay the income from the residuary estate, after payments to testator's sister, to Ida Beyer, until the death of Lena Kern, and in the event of the death of Ida Beyer before the death of Lena Kern, the trustees should pay the income to the grandchildren, as provided by the will, until the death of Lena Kern; that it was the intent of the testator that no legacies under Third (c) (2) (to the grandchildren, to the stepdaughter and her children, and to the son-in-law) should in any event be payable prior to the death of Lena Kern; and that Ida Beyer,

and her children, were not entitled to any contribution from any of the other parties by reason of the election of the widow, Lena Kern, to take under the statute rather than under the will.

Appellants claim that the renunciation of the will terminated the trust and accelerated the time of payment of the legacies under the will in the same manner as provided in the event of the death of the testator's widow and that the special legacies provided for under subdivision Third (c) (2) of the will should be paid, together with interest from June 7, 1934 (one year after the death of the testator), and that the balance of the corpus of the estate, less the amount reserved to provide an income for testator's sister, should be paid over to the testator's daughter.

Respondents contend that the intent of the testator was to provide a life income for his wife and daughter; that the daughter's right to the income for the life of the wife was not affected by the widow's renunciation of the will; that the estate of the daughter for the life of the widow still intervenes to prevent acceleration; that many beneficiaries cannot be determined until the death of the widow; that the daughter will not take the residue of the corpus of the estate unless she is living when the widow dies; and that other legatees will not take unless they are then living.

The question of acceleration is particularly important as between appellants and the testator's daughter. If the trust was not terminated by the widow's renunciation of the will, then appellants and the other special legatees are not now entitled to payment of the $18,000 in special legacies. Instead, this sum must remain in the trust estate until the death of the widow, and the testator's daughter will be entitled to receive substantially all of the income of the trust estate (which includes the special legacies) until the death of the widow. The widow had an expectancy of 14.10 years from June 7, 1934. The income on the $18,000 of special legacies for the period of the widow's expectancy, if figured at 6 per centum per annum, amounts to $15,228. The stepdaughter, the stepdaughter's children and the son-in-law take their special legacies only, if living, at the time the legacies are payable under the terms of the will. If not living, their legacies fall into the residue and go to the daughter or grandchildren.

If the trust provided for testator's daughter was terminated upon the renunciation by the widow, then the testator's daughter will not receive any part of the income on the $18,000 of special legacies during the lifetime of the widow, and the corpus of the trust estate will be immediately reduced by (1) the reservations to provide for the annuity for the testator's living sister; (2) by the payment of the special legacies in the sum of $18,000 to the testator's grandchildren, to the stepdaughter and her children, and to the son-in-law; (3) any interest due thereon; and (4) all expenses of administration. The

residue of the corpus estate, payable to the testator's daughter in such case, would amount to little in view of the amount in the estate. The corpus of the estate at the time of the trial amounted to only $25,433.09 together with $2005.49 undistributed interest. The original inventory, however, showed a total of $179,671.59, including assets pledged as collateral for loans.

Did the renunciation by the widow of the provisions of the will, and her election to take under the provisions of the statute, terminate the trust created by the will for the benefit of the testator's daughter and her children and thereby accelerate the time of payment of the special legacies and the distribution of the residue of the trust estate, so as to make the same immediately payable, as contended for by appellants?

The general rule is well stated in 28 R. C. L. 333, sec. 323 as follows: "Ordinarily the election of the widow to take against the will has the effect of accelerating any remainders limited to take effect after a life estate given to her. The election of a widow to take against her deceased husband's will is equivalent to her death as respects the payment of legacies and the distribution of that part of the estate which is to be distributed under the will upon the happening of that event. The doctrine is one of interpretation, and proceeds on the supposition that though the ulterior devise is in terms not to take effect in possession until the decease of the prior devisee, yet, in point of fact, it is to be read as a limitation of a remainder, to take effect in every event which removes the prior estate out of the way. . . . The rule now under consideration, like all other rules for the interpretation of a will, yields to the manifest intent of the testator, and if it is evident that the testator did not intend such a result, there will be no acceleration."

The general rule stated above was recognized in the case of Crossan v. Crossan, 303 Mo. 572, 579, 262 S. W. 701, 702, and the court further said: "This doctrine of acceleration is 'founded on the presumed intention of the testator that the remainderman should take on the failure of the previous estate, notwithstanding the prior donee may be still alive. And it is applied in promotion of the assumed intention of the testator and not in defeat of his intention; and when it is the evident intention of the testator that the remainder should not take effect till the expiration of the life of the prior donee, the remainder will not be accelerated.' "

In support of the general rule, stated above, and of appellants' position that the renunciation by the widow was equivalent to her death and accelerated time of payment of the specific bequests, appellants cite: 21 C. J. 994, sec. 148; Lainson v. Lainson, 18 Beav. 1, 52 Eng. Rep. 1; Jull v. Jacobs, L. R., 3 Ch. Div. 703, 181 Moak's 775; Crossan v. Crossan, supra; Boynton v. Boynton, 266 Mass. 454, 165 N. E. 489; In re Woodburn's Estate, 151 Pa. 586, 25 Atl. 145; Randall v. Randall,

85 Md. 430, 37 Atl. 209; Cockey v. Cockey, 141 Md. 373, 118 Atl. 850; In re Rawlings' Estate, 81 Iowa, 701, 47 N. W. 992; Anthony v. Camden Safe Deposit and Trust Company, 106 N. J. Eq. 41, 149 Atl. 822; Sorrells v. McNally, 89 Fla. 457, 105 So. 106; Eastern Trust & Banking Company v. Edmunds, 133 Me. 450, 179 Atl. 716; Breckenridge v. Breckenridge, 264 Ky. 82, 94 S. W. (2d) 283, and other cases.

In this case we must first look to the intention of the testator as shown by the will. The intent and design of the testator must be ascertained from a consideration of the language of the will and, if the language is ambiguous, from the surrounding facts and circumstances. The intent so expressed must be given effect unless opposed by some principle of positive law. [McCoy v. Bradbury, 290 Mo. 650, 657, 235 S. W. 1047, 1049; Burrier v. Jones, 338 Mo. 679, 92 S. W. (2d) 885, 887; Sec. 567, R. S. 1929, 1 Mo. Stat. Ann. 344.] The rule for construction of wills is stated in Weller v. Searcy, 343 Mo. 768, 123 S. W. (2d) 73, 77, as follows: "The cardinal rule for construction of wills is to ascertain the testator's intention from the language of his will—not one part alone but from the 'four corners' thereof—and so to construe it, if possible, as to give effect to all its provisions. 'When the intent of its maker is discovered, the will is solved, unless that intent runs counter to an inflexible rule of law or public policy.' [Burnet v. Burnet, 244 Mo. 491, 497, 148 S. W. 872, 874.] And in endeavoring to ascertain the testator's intent the court may, so far as is possible, put itself in the testator's position and view the situation from his standpoint. It is not to be presumed that testator was without affection and solicitous regard for his children.''

The testator had no children by his second marriage. He was survived by his daughter, Ida Beyer, and his widow, Lena Kern. Substantially the entire net income from the trust estate was intended for the benefit of these two persons. The will expressly requires the trustees to pay the remainder of the net income from the trust estate to his widow and daughter ''for and during the natural life of both.'' After the death of the widow the residue of the trust estate, after the payment of special legacies to the persons named, was to be paid to the daughter. In the event the daughter predeceased the widow, the will provided for the testator's grandchildren to take the income provided for the daughter, until the death of the widow, and, thereafter, in such case, after the payment of the special legacies, the trust estate was to be continued until the named grandchildren reached the age of twenty-five years. In the event of their death prior to reaching that age other beneficiaries were provided.

Appellants' position that the renunciation of the widow terminated the trust and accelerated the payment of the special legacies is based upon the theory that testator's primary purpose in establishing the

trust was to provide a life income for his widow; that this purpose failed upon the widow's renunciation of the provisions of the will; that the right of appellants to receive the special legacies was postponed solely for the purpose of providing a life income for the widow; that no one else was benefited in any way present or future by this provision for delay until the actual death of the widow; that no other purpose for it is discernible in the will or suggested by the testator's circumstances; that under all of the circumstances, it will be presumed that testator intended the special legacies to take effect and be payable immediately upon the termination of the widow's interest for any cause; and that, therefore, renunciation is equivalent to death.

The net income payable to the widow and daughter was to be derived from the entire trust estate, which included the $18,000 provided for the payment of the special legacies. The amount of the residuary estate, exclusive of these special legacies, is unimportant in this case. Under the terms of the will, these special legacies were to remain a part of the corpus of the trust estate until the widow's death. Until that time, the widow and the daughter were entitled to share the net income from the whole estate, including the net income derived from the funds provided for the payment of these special legacies. The postponement of the payment of the special legacies was not primarily for the benefit of the widow. It was equally for the benefit of the daughter. The daughter's right to a share of this income was to be terminated by her own death or by the death of the widow. If the daughter died before the widow, the grandchildren were to receive the income which would have been payable to their mother, until the death of the widow. Although the will provided that the death of the widow would terminate the right of the daughter to any share in the income from the funds provided for the payment of these special legacies, it does not follow that a voluntary act of the widow may deprive the daughter of a share of the income from these legacies for the life of the widow. No such intent is disclosed by the will. A contrary intent appears. Renunciation by the widow merely terminated the rights of the widow under the will. Termination of the widow's interest did not destroy the rights given by the will to the daughter, or, in the event of the daughter's death, to her children. [Castleman v. Castleman, 184 Mo. 432, 444, 83 S. W. 757; Crossan v. Crossan, supra.] The daughter's rights were in no sense dependent upon the acceptance or rejection of the will by the widow. Her rights to the income from the trust estate for the life of the widow remained in force and effect. To permit acceleration of the payment of the special legacies, merely because of the renunciation of the will by the widow, would be to permit the voluntary act of the widow to destroy the separate estate and interest of the daughter in and to the income from the special legacies during the life of the widow, and it would take from the grandchildren their right to share in this income from

the special legacies in the event of their mother's death prior to the death of the widow. This is not a case in which, after renunciation, the entire remainder of the estate, from which the income for the life of the widow was derived, goes to the person or persons sharing the income with the widow during the life of the widow. Here the daughter, in case of acceleration of time of payment of the residue of the corpus of the estate to her, would receive only part of the estate from which her part of the income was derived. The special legacies are not payable to her. Acceleration is permitted only where no contrary intent appears. Acceleration of time of payment of the special legacies to appellants and others would be detrimental to the interests of the daughter by depriving her of a share of the income from the amount of these legacies for the life of the widow and diminishing her share of benefits under the will. In other words, the daughter would not take the same interest and same amount from the present trust estate upon acceleration by renunciation as she would receive upon death of the widow. Under such circumstances we may not presume that the testator intended acceleration upon the voluntary termination of the widow's interest. We hold that acceleration of time of payment of the special legacies and of the residue of the trust estate would be contrary to the intention of the testator as expressed in his will. [Crossan v. Crossan, supra; Toombs v. Spratlin, 127 Ga. 766, 57 S. E. 59, 61; Estate of Portuondo, 185 Pa. 472, 473, 39 Atl. 1105; Reighard's Estate, 283 Pa. St. 140, 128 Atl. 847; Windsor v. Barnett, 201 Iowa, 1226, 207 N. W. 362, 364; Young's Appeal, 108 Pa. 17, 22; Murphy v. Murphy (Fla.), 170 So. 856, 872-873; 69 C. J. 1143, sec. 2448; 69 C. J. 1145, sec. 2450; 18 L. R. A. (N. S.) note, 272, 274.]

There is a further reason that the possession and enjoyment of the special legacies cannot be accelerated by the premature termination of the preceding interest of the widow. There is an intervening estate or interest still remaining after the widow has renounced her rights. The right of appellants to receive the special legacies was not alone dependent upon a termination of the widow's right to share the income from these special legacies for her life, but also upon the termination of the daughter's or grandchildren's right to share such income for the life of the widow. These rights have not terminated. These preceding interests in these legacies have not been released, waived, or destroyed. For cases, where additional intervening interests have also terminated, permitting acceleration, see: Boynton v. Boynton, supra; Eastern Trust & Banking Company v. Edmunds, supra. It is unnecessary to determine whether or not other provisions of the will prevent acceleration.

Appellants further contend that the daughter, Ida Beyer, is only entitled to one-half of the income from the residuary trust estate. They insist that "the court should not rewrite the will of Charles Kern so as

to give to Ida Beyer a share twice the size of that which the testator gave to her.'' No authorities are cited. The will provides that ''the remainder of said income shall be paid over and distributed . . . unto my wife, Lena Kern, and my daughter, Ida Beyer, . . . In the event my daughter, Ida Beyer, should predecease my wife and myself then her one-half share of the income of said trust estate shall go to her children . . .''.

The widow having renounced the provisions of the will for her benefit and having elected to take one-half of the estate under the statute, the will must now be interpreted as if it contained no provision for the wife. Provisions in her behalf must be disregarded, but the intention of the testator as to others must be carried out as nearly as possible. [Lilly v. Menke, 143 Mo. 137, 149, 44 S. W. 730.] It was the intention of the testator that his daughter receive one-half of the net income of the entire trust estate after the payments had been made to his sisters. The widow has now elected to take absolute ownership to one-half of the estate of her deceased husband. To interpret the will as nearly as may be in accordance with testator's intention we think the daughter is entitled to the entire income of the remaining portion of the trust estate, which still includes the special legacies, less the amount of income provided for testator's sister. No rights are invaded by such a construction. The testator did not intend for the special legatees to enjoy their legacies until the death of the widow. The provision that one-half of the income from the estate be paid to the daughter for the life of the widow was quite as important in case the widow renounced the will as it was in case she accepted it. The testator's intention in respect to his daughter may yet be carried into effect.

In Portuondo's Estate, 7 Pa. Dist. 92, affirmed 185 Pa. St. 472, 473-474, 39 Atl. 1105, testator devised and bequeathed the residue of his estate in trust and provided that of the net income two-thirds be paid to his wife during her natural life and the remaining one-third of the net income be paid to his mother during the lifetime of his wife. The widow renounced the will and elected to take one-half of the entire estate under the statute. It was contended that the mother was entitled to the income from only one-third of the remaining half of the estate. The court said: ''In this case the testator created a trust for the benefit of two persons, his wife and his mother. His wife, by her election, destroyed that created for her. That is the end of that; but how could she by any act destroy the trust created for his mother, by which she is entitled to one-third of the income of the residuary estate during the life of the wife, if by any possibility this trust can be executed? This is not a trust for the widow alone. There is another person interested, and as long as the purpose of the testator with reference to her can be performed, it must be done. . . . It was contended that the will of the testa-

tor only operated upon what was left after the widow's one-half of the personalty had been taken, and therefore the mother was entitled to only the income upon one-third of this balance. While it is true that when the time for final distribution of the principal arrives, it will only be what is left that is to be distributed, and the distributees will then receive only one-third of a half respectively, instead of one-third of the whole residuary estate; yet until that time, by the terms of the testator's will, the mother is entitled to one-third of the income of the whole residuary estate, and as this object and purpose of the testator can be carried out, notwithstanding widow's election, we think that in equity and justice, and upon the authority of the cases above cited, that it should be done.''

Appellants contend that they are entitled to an allowance payable out of the corpus of the trust estate as a reasonable attorneys' fee since they were defendants in a suit to construe the will. Applications for such fees were made in the answers of each of the appellants but no evidence was offered in support thereof. The decree as entered allowed the trustees an attorney's fee, but declared that none of the defendants were entitled to an allowance for such purposes. By motions for a new trial and by motions to modify the decree the appellants further sought allowances of attorneys' fees payable out of the trust estate. The decree was modified to allow the guardian *ad litem* of the two minor appellants a $50 fee as such guardian *ad litem* and $100 for an attorney's fee but attorneys' fees for the adult appellants were refused. Further motions for new trial were then filed on behalf of the appellants on account of the court's orders overruling the motions to modify the decree and allow attorneys' fees to the two adult appellants. These motions were overruled.

In support of their claims appellants say that an ambiguity arose from the will because it did not specifically provide a method of division of the estate in the event the widow renounced the will; that the trustees recognized the need for construction of the will, ceased making payments of income and filed this suit; that appellants merely presented the construction that the time for distribution of the legacies and corpus of the estate had arrived, not as an attempt to destroy the trust, but on the theory that it had fulfilled its purpose and was terminated by its terms. Appellants insist that this court should either (1) grant them an allowance of attorneys' fees in excess of that allowed by the court to the trustees or (2) should remand the cause with directions to the trial court to grant leave to appellants to make application for allowance of attorneys' fees, to hear same and to make allowance to them for attorneys' fees in such amount as the court may deem just and proper. Appellants cite, City of St. Louis v. McAllister, 302 Mo. 152, 257 S. W. 425, 426; Trautz v. Lemp, 334 Mo. 1085, 72 S. W. (2d) 104, 107; First Baptist Church v. Robberson, 71 Mo. 326; Wills, 69 C. J. 907, sec. 2074. They quote from

Trautz v. Lemp, supra, as follows: "Where an instrument that creates a trust estate is so ambiguous that two or more persons may fairly make an adverse claim to the fund, either may resort to a court of equity for correct interpretation, and the court is justified in not only assessing the costs of the litigation against the estate, but also in allowing reasonable attorneys' fees, payable out of the estate, both to the defeated and successful parties." The cases cited deal with charitable trusts, and some of the reasons for the rule do not exist in this case. However, there is no holding that an allowance of attorneys' fees is required under all circumstances and to all parties. Respondents contend that appellants rendered no services in aid of the trust; that their position was hostile to its continuation; that they sought a termination of the trust and the immediate payment of their legacies; that the services of appellants' attorneys were beneficial solely to their clients; and that their fees are not payable out of the corpus of the estate. Appellants' position as stated by answer was that "the trust created under paragraph Third terminated as to the gifts contained in paragraph Third (c) [except for gifts in paragraph Third (c) (1)], when Lena Kern, the widow of Charles Kern, elected not to take under said will, renounced the will and elected to be endowed under the laws of the State of Missouri; and that upon said election all of the specific legacies contained in paragraph Third (c) (2) of said will, totaling $18,000, were accelerated and then became vested, due and payable in full at that time to the named specific beneficiaries." Appellants sought the payment of their legacies.

The matter of an allowance of attorneys' fees was before the trial court upon the answers filed by these appellants; but no evidence was offered in support of their requests. The matter was called to the attention of the trial court by motions for new trial, motions to modify the decree, and motions for new trial directed to the refusal to modify and allow attorneys' fees to the two adult appellants. In view of the record in this case the court did not err in refusing to allow appellants any further attorneys' fees payable out of the trust estate. The matter of reopening the case to allow evidence on the question of attorneys' fees and the matter of allowance of such attorneys' fees to appellants was largely within the sound discretion of the trial court. In addition, it could hardly be said that the services of appellants' attorneys were in aid of the trust. We hold that the trial court did not abuse its discretion in refusing any further allowance of attorneys' fees to appellants. [Harnett v. Langan, 282 Mo. 471, 490, 222 S. W. 403, 409; Trautz v. Lemp, 334 Mo. 1085, 1097, 1098, 72 S. W. (2d) 104, 107; Thatcher v. Lewis, 335 Mo. 1130, 76 S. W. (2d) 677, 684; Marr v. Marr, 342 Mo. 656, 117 S. W. (2d) 230,

235; Littleton v. General American Life Insurance Company (Mo. App.), 136 S. W. (2d) 433, 440.]

Other assignments of error not briefed or argued will be considered abandoned.

The judgment is affirmed. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.