## WALLACE v. CUTSINGER ET AL.

[No. 9,519.  Filed April 19, 1917.  Rehearing denied October 9, 1917. Transfer denied December 12, 1917.]

1.  WILLS.—*Construction.—Intention.*—A will should be so construed as to give effect to the testator's intention, if this can be done without contravening some principle of public policy or some inflexible rule of law.  p. 191.

2.  WILLS. — *Construction. — Intention. — Circumstances Attending Execution.*—In ascertaining a testator's intention as expressed in his will, all the parts of the instrument must be construed together, and the court should consider the circumstances under which it was executed, and, so far as possible, place itself in the position of the testator at the time he executed the will.  p. 191.

3.  WILLS.—*Construction.—Unambiguous Will.—Testator's Intention.*—Where the language used in a will is free from doubt, it needs no construction, and the court will give effect to the expressed intention of the testator.  p. 191.

4.  WILLS. —*Construction.—Use of Words.—Presumption.*—In the absence of a clear expression to the contrary, it must be presumed that the words used by a testator in expressing his intention were employed in the sense that the law ordinarily attached to them. p. 192.

5.  WILLS.—*Construction.—Devise to Surviving Wife.*—Under an item of a will devising to testator's son a life estate in certain realty, with the fee therein to the children of such son, the fee being subject, however, to a life estate of the "surviving wife or widow" of the son, "if any such surviving wife or widow there

be," a life estate is given, not to the woman who was the son's wife at the time the will was executed and who was divorced from him subsequently to testator's death, but to the surviving wife of the son by a later marriage; and such item is free from ambiguity, so that the rules of construction need not be applied to determine its meaning. pp. 192, 194, 197.

6. WILLS.—*Construction.*—*Designation of Devisee.*—"*Wife.*"—A devise to the wife of a certain man is generally held to be a gift to the wife of such man at the time of the execution of the will, but, where the term "surviving wife or widow" of a man is used to designate a devisee, it will be construed to mean his widow. p. 194.

7. WILLS.—*Construction.*—*Vesting of Remainders.*—Although the law favors the vesting of remainders at the earliest possible period, the rule cannot be invoked to defeat the clear intent of the testator. p. 196.

8. WILLS.—*Construction.*—*Words of Survivorship.*—Words of survivorship in a will are construed as referring to the death of the testator, unless the words of the instrument clearly show that they refer to a later date. p. 197.

9. WILLS.—*Construction.*—*Survivorship.*—Under an item of a will devising to the testator's son a life estate in certain lands, with the fee therein to the children of such son, the fee being subject, however, to a life estate of the "surviving wife or widow" of the son, "if any such surviving wife or widow there be," the date of survivorship relates to the death of testator's son, and not to that of the testator. pp. 197, 198.

10. WILLS.—*Construction.*—*Testator's Intention.*—That the meaning of a will may be clear, it is not necessary for it to be so worded as to exclude every other possible meaning which might be suggested as a matter of speculation or conjecture, but its meaning may be said to be clear when the instrument fairly expresses an intention on a reasonable interpretation of the language used, regardless of other possible intentions not apparent, but which must be reached through a forced construction or circuitous reasoning. p. 197.

From Shelby Circuit Court; *Alonzo Blair,* Judge.

Action by Harry C. Cutsinger and others against Luretta Cutsinger Wallace. From a judgment for plaintiffs, the defendant appeals. *Reversed.*

*John W. Donaker, Ralph H. Spaugh* and *D. L. Wilson,* for appellant.

*W. L. Neible, R. M. Miller, H. C. Barnett, O. S. Barnett, K. M. Hord, Ed K. Adams* and *U. Z. Wiley,* for appellees.

BATMAN, J.—This is an action brought by appellees, except Ellen Pierce, against appellant to quiet title to certain real estate and for possession thereof. The complaint is in two paragraphs, the first of which sets out the source of appellees' alleged title, and the second paragraph omits such allegations. Appellant filed her demurrer to the first paragraph of complaint for want of facts, with memorandum, which was overruled, and a proper exception reserved. Appellant filed a cross-complaint against appellees for partition for such real estate, and afterwards filed an amended cross-complaint against the same parties for such purpose, setting up her source of title, and alleging that she was the owner and entitled to the possession of an undivided one-third part in value thereof during her natural life. Appellees, other than Ellen Pierce, filed a demurrer for want of facts, with memorandum, to such amended cross-complaint, which was sustained, and a proper exception reserved. Appellee Ellen Pierce also filed her demurrer for want of facts, with memorandum, to such amended cross-complaint, which was sustained, and a proper exception reserved. Appellant filed her answer to the second paragraph of complaint, alleging substantially the same facts as contained in her amended cross-complaint, as a bar thereto, to which appellees, other than Ellen Pierce, filed a demurrer for want of facts, with memorandum, which was sustained, and a proper exception reserved. Appellant refusing to plead further, judgment was rendered against her in favor of appellees, from which she prosecutes this appeal.

The first paragraph of complaint, the answer of

appellant to the second paragraph thereof, and her amended cross-complaint, all set up substantially the same facts with reference to the relationship of the parties, and the source of the title to the real estate involved. So much thereof as is necessary for the determination of the questions presented to this court are as follows: That on and prior to March 23, 1891, one Samuel Cutsinger was the owner of the real estate in controversy and remained the owner thereof until his death in October, 1893; that on said March 23, 1891, the said Samuel Cutsinger made and executed his last will, which contained, among other provisions, the following:

"Item No. 3. I give and devise unto my said wife, Elizabeth Cutsinger, the following described real estate, all being and situate in the County of Shelby, in the State of Indiana. (Here follows description of portion of real estate in question, and other real estate). * * * ."

"Item No. 4. I give and devise unto my son Ivory H. Cutsinger to be had and held by him for and during the term of his natural life only, and unto his children now living or who may be born subsequent to the execution of this will, in fee simple, subject however to the life estate in an undivided one-third part thereof to the surviving wife or widow of said Ivory H. Cutsinger, if any such surviving wife or widow there be, to be had and held by her for the term of her natural life only, the following bounded and described real estate. (Here follows description of portion of real estate in question.) * * * ."

Thereafter, on May 5, 1893, the said Samuel Cutsinger made and executed a codicil to his last will, which contained in part the following:

"Item No. 1. I do hereby revoke the devise made in Item Third of said will of all that part

of the South West Quarter of section twenty-three (23) in township Eleven (11) North, range Five (5) East in the County of Shelby, in the State of Indiana, made to and in favor of my wife Elizabeth Cutsinger, and I do hereby give and devise said realty together with the twelve acres off the North end of the West half of the South East quarter of said section in said township and range (here follows designation of said 12 acres, which together with said real estate in said Section 23 is a portion of the land in question), all unto my son, Ivory H. Cutsinger, to be had and held by him for and during his natural life only, and unto his children now living or who may be born subsequent to the execution of this will, in fee simple, subject however, to a life estate in an undivided one-third (1/3) part thereof of the surviving wife or widow of said Ivory H. Cutsinger, if any surviving wife or widow there be to be had and held by her for the term of her natural life only.  *  *  *  ."

That thereafter the said Samuel Cutsinger died in the month of October, 1893, the owner of the real estate in controversy, which was devised to the legatees named in his said last will and codicil thereto, as set out above; that said will and codicil were duly admitted to probate in the Johnson Circuit Court on October 25, 1893, and that the same are now in full force and effect; that at the time of the execution of said will and codicil, and at the death of said Samuel Cutsinger, appellee Addie M. Cutsinger was the wife of the said Ivory H. Cutsinger, and appellees Harry C. Cutsinger, Corwin R. Cutsinger, and one Samuel I. Cutsinger were their children; that said Samuel I. Cutsinger died prior to the beginning of this action, intestate, unmarried, and without issue; that no other children were ever born to either Addie M. Cutsinger

or Ivory H. Cutsinger; that subsequently to the death of said testator, Addie M. Cutsinger was divorced from her husband, Ivory H. Cutsinger, and thereafter, on March 5, 1904, he intermarried with the appellant herein; that no child or children were born of such marriage; that subsequently, on August 7, 1912, the said Ivory H. Cutsinger died, leaving appellant surviving him as his widow; and that appellant subsequently intermarried with one William Wallace. It is also alleged in appellant's amended cross-complaint that appellee Ellen Pierce is the owner of a certain portion of said real estate subject to the life estate of cross-complainant in one-third in value thereof by conveyance from her coappellees. Based on such facts, appellees, other than Ellen Pierce, claimed in each paragraph of their complaint that they were the owners in fee simple and entitled to the possession of the real estate described therein; and appellant in her amended cross-complaint claimed that she was the owner and entitled to the immediate possession of an undivided one-third part in value thereof during her natural life, and likewise claimed in her answer to the second paragraph of complaint that such facts were a bar to the complaint.

Appellant relies on the following errors, which she has assigned, for a reversal of the judgment against her, to wit: Overruling her demurrer to the first paragraph of complaint, and sustaining the demurrer of appellees to her amended cross-complaint, and to her answer to the second paragraph of complaint.

The determination of the questions raised by the assignment of errors depend solely on the identity of the person designated in said last will of Samuel Cutsinger and the codicil thereto, as "the surviving wife or widow of said Ivory H. Cutsinger." Appellant

claims that she, being the surviving wife of said Ivory H. Cutsinger, and therefore his widow, is the person so designated, and is therefore the owner of a life estate in one-third of said real estate; while appellees claim that appellee Addie M. Cutsinger, who was the wife of said Ivory H. Cutsinger when said will and codicil were executed and when said testator died, but who was subsequently divorced from him, is the person so designated, and hence that she is the owner of the life estate in one-third of said real estate mentioned in said will and codicil, to the exclusion of appellant. We must therefore direct our attention to an interpretation of such will in that regard.

In doing this, we must bear in mind that it should be the primary purpose on the part of the court to discover, if possible, the intention of the testator, and give effect thereto, as he has expressed such intention in his will, provided always that this can be done without contravening some principle of public policy or some inflexible or unyielding rule of law. *Stimson* v. *Rountree* (1906), 168 Ind. 169, 78 N. E. 331, 80 N. E. 149; *Skinner* v. *Spann* (1911), 175 Ind. 672, 93 N. E. 1061, 95 N. E. 243. In arriving at such intention, the will in all its parts must be construed together, and the court should consider the circumstances under which it was executed, and so far as possible place itself in the position of the testator at the time of its execution. *Carnahan* v. *Freeman* (1915), 183 Ind. 271, 108 N. E. 955; *McCoy* v. *Houck* (1913), 180 Ind. 634, 99 N. E. 97; *Brunson, Admr.,* v. *Martin, Exrs.* (1898), 152 Ind. 111, 52 N. E. 599; *Skinner* v. *Spann, supra.* If we find the language used in the will free from doubt, then we need go no further, as it will need no construction. In that event it will only remain

for the court to give effect to the intention of the testator thus expressed. *Jones* v. *Chandler* (1915), 61 Ind. App. 500, 110 N. E. 235; *Carnahan* v. *Freeman, supra; Maris* v. *Wolfe* (1910), 46 Ind. App. 416, 92 N. E. 661. In the absence of a clear expression to the contrary, we must presume that the testator in choosing words to express his intentions employed them in the light of the settled meaning which the law attaches to such words. *Smith* v. *Smith* (1915), 59 Ind. App. 169, 109 N. E. 60; *Skinner* v. *Spann, supra; Hoke* v. *Jackman* (1914), 182 Ind. 536, 107 N. E. 65.

Interpreting the devise in question in the light of these authorities, we are led to the conclusion that appellant is the person, and the only person, who fits the description given therein, as the taker of the life estate in the undivided one-third of said real estate. It will be observed that the language in such will provides in express terms that the children of his said son should take the fee-simple title to said real estate, "subject however to the life estate in an undivided one-third part thereof to the surviving wife or widow of said Ivory H. Cutsinger, if any such surviving wife or widow there be."

While it is possible that the testator might have had in mind the appellee Addie M. Cutsinger, the then wife of his said son Ivory H., when he executed such will, as claimed by appellees, we have no means of knowing that such was the fact. He failed to limit such life estate to her in terms or by implication, and we have no authority to read it into such will on mere conjecture. As has been said, the intention which a court must carry into effect by a judicial interpretation of a will is that intention which is embodied in, and expressed by, the language of the

will itself. The court cannot speculate upon an intention not expressed nor plainly implied therein. The inquiry therefore is never what the testator meant to express, but what the words used do express, when fairly interpreted. *Lee* v. *Lee* (1909), 45 Ind. App. 645, 91 N. E. 507; *Daugherty, Admr.,* v. *Rogers* (1889), 119 Ind. 254, 20 N. E. 779, 3 L. R. A. 847. It therefore follows that when the language of a will is clear and definite, it must be interpreted in its ordinary meaning, and the testator must be deemed to have meant what he said. In this case the language used by the testator in making the devise in question is so broad that it must be held to refer to such widow as his said son might leave on his death, whoever she might be. It is free from ambiguity, and therefore we are bound by the intention thus expressed, without resort to rules of construction to determine its meaning.

It is significant that, in making provision for the surviving wife or widow of his son Ivory H., the testator did not use the name Addie M., who was then the wife of his son. An examination of the will and codicil thereto discloses the fact that the testator mentioned his wife four times therein, and each time he designated her as his wife, Elizabeth Cutsinger. This indicated his habit as to form of expression. He, no doubt, was well acquainted with the wife of his son Ivory H. and, in view of his form of expression with reference to his own wife, it is evident that he would have designated the then wife of his son in like form, if he had intended her, to the exclusion of others, by the term "surviving wife or widow."

Again, it is significant that the testator did not use the unqualified term "wife" with reference to such

life estate, but each time, both in the will and codicil thereto, when referring to such life estate he invariably used the qualified term "surviving wife or widow." It is generally accepted that a devise to the wife of a designated man is a gift to the wife of such man existing at the time of making such will. 40 Cyc 1456; *Meeker* v. *Draffen* (1910), 137 App. Div. 537, 121 N. Y. Supp. 1051; *Meeker* v. *Draffen* (1911), 201 N. Y. 205, 94 N. E. 626, 33 L. R. A. (N. S.) 816, Ann. Cas. 1912A 930. In this case, however, there is no such unqualified designation. The term used is "surviving wife or widow" of Ivory H. Cutsinger. It means no more or less than his widow. This was in effect so held in the case of *Fletcher* v. *Monroe* (1895), 145 Ind. 56, 43 N. E. 1053.

Moreover, the appellee Addie M. Cutsinger was neither the surviving wife nor widow of Ivory H. Cutsinger at the time of his death. She had long since ceased to be his wife, and hence could not be his widow. The most that could be said was that she was his divorced wife, but in no sense his widow. She did not therefore meet the description of the person designated in the will and codicil thereto as the life tenant. In the case of *Fletcher* v. *Monroe, supra,* the court, in discussing the effect of a divorce, says on page 58: "A divorce granted to one party, fully dissolves the marriage relation as to both. R. S. 1894, section 1060. (R. S. 1881, section 1048).

"The appellant, therefore, was not the surviving widow of Timothy R. Fletcher, and had no rights as such, regardless of the question as to whose fault it was that brought about a dissolution of the marriage relation between them.

"Timothy R. Fletcher had a right to remarry, and may have done so, and left surviving him a real

widow. He could not leave two lawful widows. The woman he married after the divorce from the plaintiff, if the marriage continued until his death, would certainly be his widow, which necessarily would exclude the appellant as to lands of which he died seized. She is now no more his widow than if he had married a second wife, and died during the continuance of that relation.''

To the same effect are the earlier cases of *Whitesell* v. *Mills* (1855), 6 Ind. 229, and *Wiseman* v. *Wiseman* (1880), 73 Ind. 112, 38 Am. Rep. 115.

The devise in question not being to the appellee Addie M. Cutsinger, by name or by the unqualified term "wife" of Ivory H., but to his widow, it could not be ascertained until his death who would answer the description, or, in other words, who would be his widow, and thus be the taker of such life estate. Time proved the appellant to be the only person answering the description at such time, and she therefore must be taken as the person intended by the testator to hold and enjoy such life estate. Numerous facts disclosed by the will and codicil point unerringly to the correctness of this conclusion. They indicate that the testator was a man of large family, and possessed of a very considerable estate. It evidenced a discerning mind and a solicitude for the future welfare of those dependent upon him. He apparently was careful to equalize their respective shares. To the most of his children he gave land in fee simple, but to his son Ivory H. he gave a life estate only, devising the remainder to his children, subject to the life estate of the surviving wife or widow of Ivory H. in an undivided one-third thereof, if any such there be. He expressly provided, not only for the children of Ivory H. then in life, but such as might thereafter be born

to him. From these and other evidences within the will and codicil, it is apparent that he had a mind for future conditions and made provisions in anticipation thereof. He knew the uncertainty of life and the possibility of a second marriage of his son Ivory H. He realized that he was limiting the interest in the land devised to him to a life estate, and as a result his surviving wife or widow would take no interest in such land under the law, in case of his death. To avoid this possible injustice, he carved out a life estate for her, whoever she might be at his son's death. He evidently realized that his son's wife, with whom he was then living, might die, that his son might marry again, and that children might be born of such second marriage; and so, with the apparent care and discernment which characterizes his whole will and the codicil thereto, he refrains from naming his son's wife at such time as the taker of such life estate, but made use of a general designation that would definitely determine such taker at the time such estate ripened into possession. The case of *Meeker* v. *Draffen, supra,* very strongly supports the conclusion we have reached as to the intention of the testator in this case.

We recognize the rule cited by appellees that the law favors the vesting of remainders at the earliest possible period, and that such rule may have 7. controlling weight in doubtful cases. However, it cannot be invoked to defeat the intent of a testator where such intent is reasonably clear. *Stephens* v. *Evans' Admx.* (1868), 30 Ind. 39; *Myers* v. *Carney* (1908), 171 Ind. 379, 86 N. E. 400; *Flint* v. *Wisconsin Trust Co.* (1912), 151 Wis. 231, 138 N. W. 629, Ann. Cas. 1914B 67.

Where, however, as in this case, the language of a

will is plain and the intent of the testator is clearly indicated thereby, there is no need of resorting to rules of construction; and the courts will give effect to the intention so expressed, if not contrary to some principle of law. *Smith* v. *Smith, supra; Myers* v. *Carney, supra; Skinner* v. *Spann, supra.* We find the language of the will in this case plain and free from ambiguity. Hence there is no need to resort to rules of construction, which are applicable only to doubtful cases.

Appellees' final contention is based on the theory that the gift to the surviving wife or widow of Ivory H. Cutsinger was contingent on the death of the said Ivory H. before that of the testator. We find no substantial basis for such a theory in either the will or codicil. In reaching this conclusion, we have not been unmindful of the rule that words of survivorship in a will are construed as referring to the death of the testator in all cases where the words of the instrument are not such as clearly show that they refer to a subsequent date. *Curry* v. *Curry* (1914), 58 Ind. App. 567, 105 N. E. 951; *Smith* v. *Smith, supra.* However, in this case such rule has no application, since the date of survivorship clearly relates to the death of the testator's son Ivory H. This is made manifest first by the initial impression given by a careful reading of such will and codicil. In fact, no other impression arises until we indulge conjecture as to other possible meanings. In order for the meaning of a will to be clear from the language used, it is not necessary for it to be so worded as to exclude every other possible meaning which might be suggested as a matter of speculation or conjecture. The meaning of a will may be said to be clear when it fairly

expresses an intention on a reasonable interpretation of the language used, regardless of other possible intentions not apparent but which must be reached through a forced construction, or circuitous reasoning. It is further made manifest by the fact that, if such an interpretation were adopted, it would 9. have the effect of showing an intention on the part of the testator to provide for the widow of his son, if his death preceded his own, but if his son should survive him and then die at a more advanced age and thereby leave his widow in a more helpless condition, she should be left wholly dependent on the charity of others. Such was clearly not the intention of the testator.

The interpretation we have given the devise is clearly in accord with the manifest intention of the testator, and the property is thereby cast where the law would have cast it if there were no will. This is true for the reason that the appellee Addie M. Cutsinger, being only the divorced wife at the death of Ivory H., did not become his widow in any sense, and hence would have taken no interest in his estate on his death if he had taken a fee-simple title to such real estate by inheritance instead of a life estate as a devisee; while appellant being his wife at the time of his death became his widow, and hence would have taken the identical estate devised to her, viz., a life estate in an undivided one-third, inasmuch as she was a second childless wife of Ivory H., who left surviving him children by a former marriage. Such fact should have weight. *Kilgore* v. *Kilgore* (1891), 127 Ind. 276, 26 N. E. 56. We are therefore firm in our conviction that the conclusion we have reached with reference to such devise is the correct one.

Judgment reversed, with directions to sustain

appellant's demurrer to the first paragraph of complaint, to overrule the several demurrers to the amended cross-complaint of appellant and to her answer to the second paragraph of the complaint, and for other proceedings not inconsistent with this opinion.

NOTE.—Reported in 115 N. E. 789. Wills: construction, 2 L. R. A. (N. S.) 443; words of survivorship, time referred to, after life estate, 14 Ann. Cas. 706. Who takes under gift to "husband," "wife" or "widow," 33 L. R. A. (N. S.) 816. See under (2) 40 Cyc 1413; (3, 4) 40 Cyc 1392, 1396; (6) 40 Cyc 1456; (8, 9) 40 Cyc 1511.