LUTHER REECE MARR, by his next friend, AILEEN MARR, Appellant, v. EMMA C. MARR, Executrix of the Estate of LUTHER D. MARR, EMMA C. MARR and LUTHER MARR.—117 S. W. (2d) 230.

Division One, May 26, 1938.*

*NOTE: Opinion filed at September Term, 1937, April 1, 1938; motion for rehearing filed, motion overruled at May Term, 1938, May 26, 1938.

*Martin J. O'Donnell* for appellant.

*Oscar D. McCollum* and *Watson, Ess, Groner, Barnett & Whittaker* for respondents.

FRANK, P. J.—Action in equity to construe and enforce a trust created by clause five of the will of Luther D. Marr, deceased, for the benefit of his grandson, Luther Reece Marr.

Luther D. Marr died on January 31, 1933, and left surviving him, his widow, Emma C. Marr, and one son, Luther Marr. His widow was named as executrix of his will.

Clause five of the will reads as follows:

"I direct my executor to use sufficient of funds, placing in trust in the Traders-Gate City National Bank, Kansas City, Missouri, to purchase a security, interest bearing in the sum of Five Hundred and no/100 (500.00) the accumulated interest to be credited regularly and to bear interest so long as this trust is intact, the same to be a bequest to my dear grandson, Luther Reece Marr, until he shall have attained his majority (age 21), and at that time if he be surviving; the said Trust accumulated amount to be paid over and delivered to him, the said Luther Reece Marr."

The executrix contends that this clause of the will requires her to place in trust funds sufficient to purchase an interest bearing security of the face value of $500. The grandson contends that the will, when properly interpreted, directs the executrix to place in trust sufficient funds to purchase a security which will bear $500 interest annually.

The court below construed the will as requiring the executrix to place in trust a sum sufficient to purchase a security that would produce $500 interest annually, found that $12,500 at four per cent would produce that amount, and decreed that the executrix deposit the sum of $12,500 with the trustee, and appointed a new trustee to execute the trust.

Thereafter the court sustained defendant's motion for new trial and granted a new trial on the ground that the judgment was against the law as applied to the evidence. Plaintiff appealed.

In the trial below both parties, without objection, introduced extrinsic evidence as to the character, extent and value of testator's property to aid in the construction of clause five of his will. Inasmuch as both parties tried the cause on the theory that such evidence was admissible, we will so treat the case here. Other evidence was introduced which we will notice in the course of the opinion.

Appellant argues that testator knew that his wife and son would be well provided for by his life insurance and by the residue of the estate which the will would leave to them, and with an estate shown to be worth from $250,000 to $400,000, he evidently intended that the trust which he created by clause five of his will for his grandson should yield an income of $500 annually.

W. R. Shinfessel, plaintiff's grandfather, was called as a witness by plaintiff. He testified that Luther Marr, father of plaintiff and son of testator, said that testator's property was worth four or five hundred thousand dollars in normal times, but during the depression it was not worth that much; that he never heard testator say anything about the value of the estate; that he did not know what encumbrances were on any of testator's land.

Aileen Marr, plaintiff's mother, was called as a witness for plain-

tiff. She testified that she heard testator say that his property was worth over $40,000.

Asa K. Browning, a real estate man, testifying for plaintiff said that he knew of the Atherton farm which Mr. Marr owned at the time of his death; that back in 1924, prior to the time Mr. Marr bought it, that farm sold for $217 per acre. He further testified that Mr. Marr was reputed to have been quite well to do, and led him to believe he was worth from two to four hundred thousand dollars; that he had too much property and not enough cash; that he was short of cash; that it was the first time he had ever been unable to meet some interest he owed on some of his property. He said he had as much property as he ever had but he was shorter of cash than he had ever been since he had been in Missouri.

Plaintiff's evidence as to the value of the estate has little, if any, probative value.

Defendants' evidence touching the value of the property is as follows:

Defendant, Emma C. Marr, wife of testator and executrix of his will, testified in her own behalf, in substance, as follows:

"I am the widow of testator and executrix of his estate. His will was made in January, 1932. He died on January 31, 1933. As executrix, I filed an inventory in which I listed all the assets of the estate. I have not been required to pay an inheritance tax on the estate. At the time of testator's death he had sixty-two dollars and some cents on deposit in the bank. His bank account was low for some time previous to his death, and was low in January, 1932, when the will was made. The income from the properties and farms which testator owned was not sufficient to pay the taxes and interest on the mortgage indebtedness on the properties. For several years he had to borrow money to pay the interest and taxes. Our residence, Lots 13 and 14, Block 3 Rockhill Park, was encumbered for between seven and eight thousand dollars. I lost that property—conveyed it to the insurance company that held the mortgage. A 240 acre farm located in Cass County, Missouri, near Raymore was encumbered by a twenty thousand first and a six thousand dollar second mortgage. It was lost by foreclosure sale. A 220 acre farm, known as the Atherton farm was encumbered for about $25,000. An unimproved fifty-five acre tract adjacent to the town of Chanute rents for $120 per year for pasture. This amount pays the taxes. Have been offered $500 for it. An unimproved farm of 300 acres known as the Logan farm is worth three or four dollars per acre. My husband traded an old house in Kansas City for it. He never saw the land. There is a half section of land in Texas County, Oklahoma, that cost my husband about ten dollars per acre. We own an undivided three-fifths interest in Lot 3, Block 30, Old Town in Tulsa,

Oklahoma. We get no rent from this property and it costs us the taxes. Nobody will offer us anything for it. It is unsalable. The inventory shows three tracts of land near Tulsa, Oklahoma, two of fifty acres each and one of forty acres. These properties have been on the market for some time, and I have had no offers on them lately. Two and one-half acres in Linn County, Oklahoma, and Lot 9, Block 1 of Boicourt on which is located an old store building ready to fall down, and three old leaky houses. I get no rent from this property. No one would buy it in its present condition. I own an undivided half interest in all the property located in Oklahoma except the bank building. My husband loaned his brother $200 on two lots located in an addition to Fort Worth, Texas. He had to take the lots. They are not worth $200." She further testified:

"Q. Now it is mentioned in the will of Mr. Marr a certain property in Wilson County. Do you recall the acreage of that ranch property? A. Something over 1100 acres.

"Q. And in the will he states that you have invested in that property of your own money the sum of $5,000. Is that true? A. Yes, sir, and there wasn't that much equity in it.

"Q. What has become of the property? A. Well, it was foreclosed.

"Q. Did you buy any of the property when it was foreclosed? A. No, sir. I don't want it. I wouldn't have it as a gift."

My husband left no securities, stocks or bonds. He had not to exceed one thousand dollars in notes which cannot be collected. It was the wish of my son that the estate go to the creditors. "I offered the estate for the debts and nobody would take it, and we thought the honorable thing to do would be to take up this and try to pay his debts and we are trying awful hard to do it and I don't know how we are going to do it."

On cross-examination she testified that the estate owed her $35,000; that the estate was worth about $50,000, but the debts exceeded the estate; that testator left $75,000 insurance, about $6,000 of which went to the estate and the balance to her and her son; that she and her son were to take care of the estate and that is where $35,000 of her money went.

The following clause of the will shows that the properties were encumbered and taxes were delinquent. It reads as follows:

"I ask my executor of this, my last will and testament, to particularly note the inventorying of the several properties I have acquired during life (practicing rigid economy at times frequent) and to act promptly in protecting equity assets from distress or hazard; taxes should be reduced on all real property and holding aloof, from sale for a time much of the real estate, bills receivable, leases, contracts

and securities of whatsoever character, for the return of normal prices, which will cause the least possible sacrifice.''

Robert L. Dominick, testator's banker, testified as a witness for defendants. He corroborated the testimony of the executrix as to the character, extent and value of testator's property. He testified he knew Mr. Marr's financial condition in January, 1932, at the time the will was drawn.

''Q. State to the court what that situation was? A. He owed our bank approximately twenty-five or twenty-six thousand dollars. Part of the obligation was a joint obligation of himself and his wife, Mrs. Emma Marr. We requested her indorsement by reason of the fact that we did not want to extend much additional credit on his unsecured obligations. Along about that time or prior to that I had asked Mr. Marr to reduce his obligations to our bank, feeling that he had become too frozen. He said the only security which he could give us was a mortgage on the Atherton farm, approximately half of which had a first mortgage of $3,500 on it. We took a first on the remaining portion of the Atherton farm and a second to cover the balance of the farm. . . .

''Q. Did he ever tell you anything about land he owned in Rogers County, Oklahoma? A. Yes, sir, he talked about everything he owned.

''Q. What do you recall specifically? A. To be specific in regard to it, he did not consider it had a great value.

''Q. Which tract was he talking about at that time? A. What time are you talking about?

''Q. Which tract was he talking about at the time he told you about what you just said? A. Every piece he had and everything he owned on God's earth, which was right while he was talking and going over it completely, trying to get some security out of it. I got out of him every thing of value he had at that time.''

Witness Dominick further testified that it was questionable whether Mr. Marr had sufficient property to pay his debts.

Touching the question of the relation between the testator and the grandson, the grandson's mother testified that testator seemed to be very fond of the grandson, and made gifts to him at Christmas time. Plaintiff also offered a letter written to the grandson's mother in which testator referred to the grandson as a fine American boy, offered to take him into his home, rear and educate him, then finance him to a position of his own choosing, all in a spirit of love and affection for the young fellow.

In the gift to the grandson, the will refers to him as ''my dear grandson.'' The will also refers to testator's wife as ''my good and loving wife,'' to his son as ''my dear son,'' and to his mother as ''my dear and loving mother.''

Other provisions of the will may aid in the construction of clause five here in controversy.

Clause three gives to testator's church the sum of $250.

Clause four gives to ''my dear and loving mother'' the sum of $500.

Clause six gives to ''my good and loving wife'' the home and other things of consequence about the living quarters.

It will be remembered that the wife lost the home by foreclosure.

Clause six gives to ''my dear son, Dr. Luther Marr,'' my diamonds, ring, watch, typewriting machine, gun and such other mannish things.

Clause seven gives to ''my good and loving wife, Emma C. Marr,'' and to ''my dear son, Dr. Luther Marr,'' or to the survivor of either, the residue of my estate, equally, share and share alike.

Clause five of the will stripped of all provisions about which there is no controversy, reads as follows:

■ ''I direct that my executor to use sufficient of funds to purchase a security, interest bearing in the sum of Five Hundred and no/100 dollars ($500.00).

We must gather the intent of the testator from the language of the will. We construe this clause of the will as a direction to the executrix to use sufficient funds to purchase an interest bearing security of the face or par value of $500.00. Argument is advanced that the direction to *use sufficient funds to purchase a security* clearly indicates that testator did not intend that a $500 security be purchased. We cannot agree with appellant's contention. It is a matter of common knowledge that a five hundred dollar interest bearing security might be selling on the market either at a discount or at a premium, and accrued interest might have to be taken into consideration. The fact that the testator directed the executrix ''to use sufficient of funds,'' to purchase a *five hundred dollar* interest bearing security, indicates that he knew that such a security might cost either more or less than five hundred dollars, depending upon whether it was selling upon the market at a premium or at a discount. The directions in the will are clear, plain and simple. All the executrix need do is to go upon the market and determine what a safe five hundred dollar interest bearing security would cost, then do as the will directs her to do, deliver to the trustee sufficient funds to purchase such a security.

Under the construction contended for by appellant, the will would direct that security be purchased in an unnamed amount, drawing an unnamed rate of interest sufficient to produce an income of $500 within an unnamed perior of time. In other words, under such construction, no principal amount was named by testator, no interest rate was fixed and no period of time was fixed during which the interest should amount to $500. Such a construction is strained and

unnatural, and not justified by the language of the will. There is a clear distinction between a direction to purchase a security, interest bearing in the sum of $500, and a direction to purchase a security bearing interest in the sum of $500. In the former, the words "interest bearing" modify the word "security" and thus describe the type of security to be purchased. Such is the plain and ordinary meaning of the words "interest bearing." The words "in the sum of five hundred dollars" fix the par or face value of the security.

The parol evidence to which we have called attention supports the conclusion we have reached. The evidence as to testator's relation to and feelings toward the parties named in his will does not indicate that he desired to prefer his grandson over his old mother or the members of his own family. He referred to all of them in most endearing terms. The undisputed evidence shows that debts left by testator exceeded the value of the estate, and that the executrix used $35,000 of her own funds to pay on said debts. In the light of the evidence there is no foundation for the contention that testator was worth from $250,000 to $400,000, and for that reason he would not have left his grandson, for whom he expressed a kindly feeling, the small sum of $500. To construe the will as directing the executrix to place in trust for the grandson an amount of money sufficient to purchase a security which would bear $500 interest annually, would require the setting aside of from $12,500 to $16,666, depending upon the market value of such a security and the rate of interest it was bearing. Such a construction of the will would show a decided preference for the grandson which neither the will nor the extrinsic evidence justifies.

■ Robert L. Dominick, testator's banker, testified over objection of plaintiff, to the effect that testator discussed with him the provisions of his will relative to his grandson, and that testator told him that he intended that his grandson should have $500. This evidence should not have been admitted. It is never proper to admit declarations of the testator as to what he intended by his will. The admission of such testimony would, in effect, permit a will to be made by parol in violation of the statute which requires wills to be in writing. [Sec. 519, R. S. 1929; Neibling et al. v. Orphans' Home, 315 Mo. 578, 595-6, 286 S. W. 58, 65, 51 A. L. R. 639.]

However, the admission of this evidence need not work a reversal of the case. In equity cases this court excludes from consideration evidence improperly admitted and reaches its judgment on competent evidence offered. [Blumer v. Gillispie, 338 Mo. 1113, 93 S. W. (2d) 939, 943.]

■ The court below allowed plaintiff's counsel a fee of $1,000 to be paid out of the estate. Defendants contend that such allowance was improper.

Plaintiff contends in his brief that clause five of the will is plain and unambiguous; "that the language itself, without extrinsic aid, compels the conclusion that the deceased intended that the executrix should place sufficient funds in the hands of the trustee to produce an annual income of five hundred ($500.00) dollars."

We agree with plaintiff that this clause of the will is plain and unambiguous, and for that very reason it needs no construction. But we do not agree with plaintiff's interpretation of its plain language. We have considered the parol evidence offered as to the circumstances and conditions surrounding testator at the time the will was made, not because the aid of such evidence was necessary to an understanding of the plain language of the will, or that such evidence was admissible, but because both parties tried the case on that theory without objection. That character of evidence is admissible in a suit to construc a will where the terms of the will are ambiguous and of doubtful meaning.

Where the terms of a will are plain and unambiguous, the beneficiary who brings a suit to construe the will, and in that suit admits that the will is plain and unambiguous, should not be allowed attorney fees out of the assets of the estate, on the ground that he and the executrix could not agree as to the meaning of the will. To require attorney fees to be paid out of the assets of the estate under such circumstances would furnish opportunity for any disappointed or dissatisfied beneficiary to bring a suit to construe the will, although its terms were plain and unambiguous, entertaining the hope that he might obtain a compromise of his claim, knowing that if in the end he lost his suit, the cost of the litigation, including his attorney fees, would be paid out of the estate. [Trautz v. Lemp, 334 Mo. 1085, 1097-8, 72 S. W. (2d) 104.] We hold therefore, that the allowance of an attorney fee to be paid by the estate was improper.

There are fourteen grounds assigned in the motion for new trial. The trial court granted a new trial on the second ground of the motion. The granting of a new trial on the second ground of the motion, in effect, overruled the motion as to the other thirteen grounds. Appellant contends that since respondent did not except to the court's action in overruling the motion as to the thirteen grounds and did not appeal therefrom, this court is without jurisdiction to grant respondent any relief as to the issues raised by said thirteen grounds. Sakowski v. Baird, 334 Mo. 951, 62 S. W. (2d) 649, is cited in support of this contention. The contention made by respondent is not the law, and the case cited by him in support of the contention does not so hold. What the cited case does hold is that since the new trial was granted on the second ground of the motion, respondent cannot invoke the issues presented by the other thirteen grounds of the motion in support of the court's action in

granting a new trial, unless he preserved his point as to such issues by proper objection made and exceptions saved during the progress of the trial.

The motion for new trial sufficiently presents every issue we have discussed.

The action of the court in granting a new trial is affirmed and cause remanded for further proceedings not inconsistent with this opinion. All concur, except *Hays, J.*, absent.