BERNICE W. SCULLIN, Plaintiff-Appellant, v. MERCANTILE-COMMERCE BANK & TRUST COMPANY, a Corporation, THOMAS C. HENNINGS and LENORE MADELINE CLARK, as Trustees Under the Will of JOHN SCULLIN, Deceased, LENORE MADELINE CLARK, Individually, STELLA WADE SCULLIN WARREN, EUGENIA SCULLIN SULLIVAN BAGNELL, MAY SCULLIN GREEN, ROSE MAY DE'GHEEST LOWTHER, Defendants-Respondents, No. 41737—234 S. W. (2d) 597.

Division One, December 11, 1950.

*Harry A. Frank* for appellant.

338

*R. Walston Chubb* and *Philip A. Maxeiner* for respondents Eugenia Scullin Sullivan Bagnell and May Scullin Green; *Lewis, Rice, Tucker, Allen & Chubb* of counsel.

*Paul Bakewell, Jr.,* for respondents Lenore Madeline Clark and Stella Wade Warren; *Bakewell, Bakewell & Cramer* of counsel.

[599]  DALTON, J.—Action to construe the will of John Scullin, deceased including Item II, clause L, which provides for a power of appointment after the death of one of testator's daughters, May Eunice De'Gheest, and, after the exercise of said power of appointment, for the distribution annually of the excess or balance of said daughter's share of the income of the trust estate to certain named persons.  Plaintiff claims one-fifth of the excess of income from said share for the years 1947 and 1948, towit, $13,280.34, and it was stipulated that, if she is entitled to share in such excess, that sum should be paid to her.

The trial court found that plaintiff had no right, title or interest in any part of the excess of income from the original De'Gheest portion of the trust estate, entered judgment accordingly and taxed the costs against her.  She has appealed.  Since the amount in dispute, exclusive of costs, exceeds the sum of seventy-five hundred dollars, this court has exclusive jurisdiction of this appeal.  Art. V, Sec. 3, Const. of Missouri, 1945.

John Scullin died May 28, 1920.  His will, dated February 26, 1920, was  admitted to probate in the Probate Court of the city of St. Louis on June 3, 1920.  His estate had been duly administered. The will contains numerous provisions, but only a few need be reviewed here.  It is sufficient to say that a trust was created, trustees appointed, certain annuities provided and provision made for the disposition of certain remaining net income from the trust estate.  Clause C was to govern the distribution of this remaining net income while a son, Harry Scullin, lived, and clause D was to govern the distribution of such income after Harry Scullin's death. Clause L, dealing with the excess of income from the De'Gheest share, is particularly important.  These clauses are, in part, as follows: "(C) All the rest and residue of the net income shall be distributed as follows: one-fourth to my son Harry Scullin so

long as he shall live; one-fourth to my daughter May Eunice De'Gheest so long as she shall live; one-fourth to my daughter Lenore Madeline Clark so·long as she shall live, and one-fourth to my daughter-in-law Stella Wade Scullin so long as she shall live. * * * (D) But after the death of Harry the said residue of ·the net income shall no longer be distributed in fourths as provided in clause (C); thereafter the proportion to be given to each of the beneficiaries shall change as follows: (1) My daughter May Eunice De'Gheest, or those succeeding to her interest, shall receive one equal part; (2) My daughter Lenore Madeline Clark so long as she shall live or upon her death her daughter Mary Denman Clark and such other children as may be born to Lenore hereafter, or those succeeding to their interest, shall receive one equal part; (3) My daughter-in-law Stella Wade Scullin so long as she shall live or upon her death, then my grandchild Mary Lenore Scullin, or those succeeding to her interest, shall receive one equal part; (4) Harry's wife Julia so long as she shall live shall receive one equal part; (5) Harry's daughter May, or those succeeding to her interest, shall receive one equal part; and (6) Harry's daughter Eugenie, or those succeeding to her interest, shall receive one equal part. If any part or share becomes extinguished by reason of the death of the first taker and the absence of successors in such interest, such part shall be added to the part going to the others as hereinbefore provided; for instance, if Julia dies first, the income thereafter shall be divided into five parts instead of six. * * * (L) Upon the death of my daughter May Eunice De'Gheest the part of the income which would have gone to her if living, shall be distributed by the trustees as follows: the trustees shall, during the life of the trust, have the power of appointment as to said share and shall distribute the same as they may deem proper, 1st, either to my said daughter's husband Charles De'Gheest if living or to her son Harry De'Gheest if living or to Harry De'Gheest's descendants, or any of them, [600] or, 2d, to my son Harry Scullin if living *or if he be dead, to his wife and children or their descendants,* and to my daughter Lenore Madeline Clark if living, or if she be dead, to her children or their descendants, and to my daughter-in-law Stella Wade Scullin if living, or if she be dead, to her daughter Mary Lenore Scullin or her descendants, until the termination of the trust. It shall be entirely optional with the said trustees to give as much or as little of the said part or share of income to May Eunice De'Gheest's husband or son or son's descendants, or any of them, as the trustees may deem proper, or they may distribute the whole or any part between them as the trustees may deem proper. * * * All income of the said part or share which the trustees from time to time do not see fit to give to May Eunice De'Gheest's husband or son or son's descendants shall be given by the trustees to my son Harry if living, *or if he be dead, to his wife*

*and children or their descendants,* and my daughter Lenore Madeline Clark if living, or if she be dead, to her children or their descendants, and to my daughter-in-law Stella Wade Scullin if living, or if she be dead, to her daughter Mary Lenore Scullin or her descendants, *in equal parts as provided in clauses (C) and (D) until the termination of the trust.  \* \* \*''* (Italics ours).

The parties stipulated certain facts ''for the purpose of this action.'' The stipulation was offered and received in evidence without objection. John Scullin was born in 1836 and died in 1920. His wife had died in 1907 and, thereafter, Harry Scullin, his wife Julia and their daughters May and Eugenia (now May Scullin Green and Eugenia Scullin Bagnell) lived in John Scullin's house with him until his death. At all times after the death of John Scullin's wife, ''his daughter-in-law Julia Scullin, wife of Harry Scullin, was in charge of the household of John Scullin, the manager of all domestic affairs, and continued as such during the life of John Scullin. Julia Scullin was held in high esteem and great affection by John Scullin, and said Julia during her lifetime was graciously solicitous concerning the welfare of her father-in-law.''

At the time of John Scullin's death in 1920, his son, Harry was 55 years of age and had been married to Julia for some thirty years. Julia Scullin died in 1931. Thereafter, Harry Scullin on January 18, 1938, married Bernice Windmeyer. Harry Scullin died February 15, 1947, leaving as his heirs his daughters, May and Eugenie and his widow, Bernice Scullin (plaintiff-appellant).

Lenore Scullin Clark, a daughter of John Scullin did not live with her father but lived in St. Louis in her own home with her husband and her daughter, Mary.

Stella Wade Scullin, now Stella Wade Scullin Warren, was the daughter-in-law of John Scullin, and the widow of his son, Charles Scullin. She resided in St. Louis. ''Stella Wade Scullin was the daughter of Festus J. Wade of St. Louis, an intimate friend and close business associate of John Scullin, and John Scullin had known the said Stella Wade Scullin from her childhood and held great regard and affection for her and his granddaughter Mary, now Mary Lenore Scullin Blair.''

May Eunice De'Gheest, a daugther of John Scullin, married a French citizen and lived abroad. She died March 24, 1945. Her husband and son had predeceased her and she left as her only descendant a daughter, Rose May De'Gheest. Thereafter, acting under the power of appointment given them by the will, the trustees turned over to Rose May De'Gheest only a portion of the income from the original De'Gheest portion and, prior to the death of Harry Scullin, distributed the excess of income to Lenore Scullin Clark, Stella Wade Warren and Harry Scullin.

After the death of Harry Scullin in 1947, his widow, Bernice Scullin, demanded one-fifth of the excess of income from the original De'Gheest share. Her claim was refused. The trustees, thereafter, distributed one-fifth of such excess of income to each of these persons, Lenore Scullin Clark, Stella Wade Warren, Eugenia Scullin Bagnell and May Scullin Green. The trustees [601] withheld and retained in their possession the remaining one-fifth awaiting the outcome of this litigation. If the judgment of the trial court is affirmed, the $13,280.34 in question will be distributed to Lenore Scullin Clark, Stella Wade Warren, Eugenia Scullin Bagnell and May Scullin Green.

The parties have further stipulated that, "the sole question presented by this proceeding is whether, under the will of John Scullin deceased, from and after the death of his son, Harry Scullin, the excess of the income from the De'Gheest portion, being the amount of such income not appointed to Rose May De'Gheest by the trustees, shall go in equal shares of one-fifth each to Lenore Scullin Clark, Stella Wade Warren, Eugenia Scullin Bagnell, May Scullin Green and Bernice Windmeyer Scullin, or in equal shares of one-fourth each to Lenore Scullin Clark, Stella Wade Warren, Eugenie Scullin Bagnell and May Scullin Green."

The trial court found "that clause (D) is the clause of said will which disposes of the income from the trust estate. That clause (L) by specific reference embodied in it clause (D) and made clause (D) itself an essential part of clause (L). That with respect to the distribution of such part of the income from the original De'Gheest portion, which the trustees may not distribute to Rose May De'Gheest, the will of John Scullin is not ambiguous but that the will read as a whole, and its explicit and expressed directions are clear and unmistakable and that, therefore, there is no room for construction of said will with respect to such matter. That if there were any possible ambiguity in said will concerning said matter, then the surrounding facts and circumstances, as stipulated, * * *" could be considered; and that "not only was the said will by its terms clear and explicit and free from any ambiguity, but when read in the light of the circumstances and its contexts, the will of John Scullin clearly indicated that the testator's intended beneficiary was Julia Scullin, who was the wife of his son Harry at the time the testator's will was executed, and who was well known to and beloved by the testator, and not the plaintiff who was unknown to the testator and who married his son Harry Scullin years after the death of the testator."

Appellant contends that, considering the will as a whole and the real intent of the testator, the words, "if he be dead, to his wife" meant the widow of Harry Scullin, who could be ascertained only at his death; that the word "wife" with the explanatory words and context of the will included not merely the wife then living when

the will was written and when testator died, but a subsequent or second wife, who survived Harry Scullin as his widow; and that clause L should be construed as of the date it became effective in 1945 and not as of the date of testator's death in 1920. Appellant insists that "nowwhere in clause (L) does the testator qualify Harry's wife by the proper name Julia, nor make any reference to his daughter-in-law Julia"; that the language used means Bernice, appellant, who survived John Scullin as his wife and widow and not Julia, who died some sixteen years prior to Harry Scullin's death; that "the reference to clauses (C) and (D) has to do with the proportion, the amount or quantity of the share, that is, before or after Harry Scullin's death" and does not refer to the identity of the beneficiary; that there is no ambiguity about the words "if he be dead, to his wife"; that it is not necessary to refer to surrounding facts and circumstances; and that "a consideration of the language, context and expressions contained in the will indicate the intention of the testator."

"The cardinal rule for construction of wills is to ascertain the testator's intention from the language of his will,—not one part alone but from the 'four corners' thereof,—and so to construe it, if possible, as to give effect to all its provisions. 'When the intent of its maker is discovered, the will is solved, unless that intent runs counter to an inflexible rule of law or public policy.' Burnet v. Burnet, 244 Mo. 491, 497, 148 S. W. 872, 874. And in endeavoring to ascertain the testator's intent the court may, so far as is possible, put itself in the testator's position and view the situation from his standpoint. It is [602] not to be presumed that testator was without affection and solicitous regard for his children." Weller v. Searcy, 343 Mo. 768, 123 S. W. (2d) 73, 77; Humphreys v. Welling, 341 Mo. 1198, 111 S. W. (2d) 123, 125; Burrier v. Jones, 338 Mo. 679, 92 S. W. (2d) 885, 887; Mo. R. S. A. Sec. 568. "The intent and design of the testator must be ascertained from a consideration of the language of the will and, if the language is ambiguous, from the surrounding facts and circumstances." St. Louis Union Trust Co. v. Kern, 346 Mo. 643, 142 S. W. (2d) 493, 496; Gregory v. Borders, 345 Mo. 699, 136 S. W. (2d) 306, 307. "The language of one will is rarely, if ever, like another and frequently a slight difference in the words used calls for different constructions of testamentary provisions similar in other respects. Even identical words properly receive diverse interpretations when used in contexts or under circumstances which are not the same. Therefore, decisions construing similar testamentary provisions are of small value as precedents and must be considered with caution." Shelton v. Shelton, 348 Mo. 820, 155 S. W. (2d) 187.

"The function of a court is to construe a will and not to make or rewrite one for the testator under the guise of construction.

\* \* \* If a will expresses the intention of the testator in clear and unequivocal language, there can be no occasion for construction; but if, when read from the four corners, there is doubt as to what the testator intended, then resort may be made to the rules of construction to aid in determining the intention of the testator." Burrier v. Jones, supra (92 S. W. (2d) 885, 887). The same general principles apply to the ascertainment of the intended beneficiary of the testator. Gannett v. Shepley, 351 Mo. 286, 172 S. W. (2d) 857, 858.

Both appellant and respondents rely upon the Gannett case, supra. Appellant refers to it as the leading case in this state on the question here present. She quotes at length from the opinion as to the applicable principles of law and then seeks to distinguish the result reached on the ground that the dominant purpose of the testator was (1) to provide for his wife as long as she lived and (2) to establish the Barnard Free Skin and Cancer Hospital, while the "primary feature in the John Scullin will was that the testator was endeavoring to adequately protect and provide (after his son Harry's death) for Harry's widow and Harry's children." In the Gannett case the will of George D. Barnard provided life annuities for his brothers-in-law Gannett and Willis (the wives of the three were sisters and further provided that "in case the said Gannett or the said Willis shall die before I do, leaving his wife him surviving, or in case the said Gannett or the said Willis should die after I do, leaving his wife him surviving, then the wife of the said Gannett so surviving, \* \* \* shall be paid \* \* \*." In an action by Gannett's widow, a second wife, it was held that "the bequest to Gannett or in the event of his death 'leaving his wife him surviving,' read in the light of the circumstances and its context, clearly indicates that the testator's intended beneficiary was his wife's sister, Clara Gannett, the person filling the relationship of wife at the time the will was executed and one who was well known to him, and not the plaintiff who became Gannett's wife six years after Mr. Barnard's death." The applicable principles of law are well stated in the Gannett case, but the application of those principles to the facts of this case require an affirmance of the judgment of the trial court.

Many cases are reviewed in an annotation in 63 A. L. R. 81, 82. It is there said: "The evident inclination of the courts, where the beneficiary of a testamentary gift is designated only as the husband or wife of a certain person, and such person is married at the time of making the will, is toward a construction of such provision as referring to the person who, at the time the will was made, bore, or might have borne, the designated relationship. The presumption that an existing person is intended may, however, be overcome by indications, to be derived from the context of the

will read in the light of surrounding circumstances, of an intention to benefit any husband or wife.''

[603] As in the Gannett case, the cases relied upon by the parties here ''only serve to illustrate that each will presents its own peculiar problem of construction and that who the testator intended by the use of the word 'husband' or 'wife' in designating a beneficiary depends largely on the context and the circumstances surrounding the testator when his will was executed.'' (172 S. W. (2d) 857, 859). Many of the cases are easily distinguishable on their facts. In Williams v. Fundingsland, 74 Colo. 315, 221 P. 1084, the court said that ''ordinarily 'wife' or 'husband', in a will, means the person who at the time of its execution, or at the death of the testator, then sustains the relation of 'wife' or 'husband' to the one named.'' The court held that the words ''to her husband should she leave a husband surviving her'' were sufficient to include a second surviving husband whom testator's daughter married after the death of her first husband. In In re Harris, 136 N. Y. Supp. 711, 713 (aff. 206 N. Y. 690), it was held that ''when Thomas Morton (testator) gave his property, on the death of his son, to his 'wife and children then living in equal shares,' he meant to include any wife who might survive his son whenever married, as well as any children that might afterwards be born to said son.'' In Wallace v. Cutsinger, 66 Ind. App. 185, 115 N. E. 789, 791, it was held that ''to the surviving wife or widow of Ivory H. Cutsinger, if any such surviving wife or widow there be,'' described only a second wife and widow married after a divorce from a first wife. In Greenwich Trust Co. v. Converse, 100 Conn. 15, 122 A. 916, 920, the words used were ''to or for the benefit of my said son or his wife and children, and upon the death of my said son, if he leave a wife surviving.'' It was held that the bequest was not ''for the personal benefit of his then wife, who is now divorced and remarried''; but that a present second wife took in her place. In American National Bank v. Morgenweck, 114 N. J. Eq., 286, 168 A. 598, 601, it was held that the words ''should however my son William die without (lawful) issue then at his death and from then on until the end of her natural life his lawful wife shall receive * * *'' would apply to any lawful wife surviving the son and not necessarily to a wife at the date of the execution of the codicil. In Perry v. Perry, 10 Ky. 16, 60 S. W. 855, the devise was to a son for life and ''at the death of himself and wife said property is to pass to his legal heirs.'' On the theory that, from the context of the will, it was apparent that the testator intended to provide for his son's heirs—not because he knew or might know who they were, but because of the natural claim the children would have upon his son for support and assistance, it was held that the word ''wife'' included a second wife. In Van Syckel v. Van Syckel,

51 N. J. Eq. 194, 26 A. 156, it was held that a provision giving certain property, after the death of testator's son, "to the children and wife of my said son," was for the benefit of the son's wife at the date of the will and of testator's death, and did not extend to a subsequent wife.

Appellant points to the fact that in ten instances in dealing with a primary share of income the testator refers to the wife of Harry Scullin as Julia, but that in the two instances in clause L "in describing Harry's wife after his death," there is an intentional omission by the testator of the name, Julia, showing that "the testator undoubtedly meant Harry's widow, the wife surviving his son, Harry, at his death." Appellant says that testator "did provide definitely in clause F that if Harry had other children they would receive an equal share under clause D"; that benefits were not limited to Julia's children; and that "it was the testator's purpose not only to provide for Harry's wife Julia, as he specifically did in clause D, but to provide for any wife surviving Harry, as he did in clause L."

We think it is clear that testator by the reference in clause L to clauses C and D incorporated these clauses by such reference, not alone as to the proportion, the amount or quantity of the shares, but as to the designation of the "wife" intended; and that having done so, the will designates, not any wife, who might become Harry's widow, but Harry's wife, [604] "Julia." Since clause D was so incorporated, it cannot be said, as appellant contends, "that the testator intentionally omitted any descriptive words as to the wife," or that testator meant any wife who proved to be Harry's widow.

We hold that the will clearly and definitely designated "Julia," as the wife of Harry intended as beneficiary in clause L, and not appellant who was subsequently married to Harry Scullin after Julia's death. The testator's intention is so clearly expressed that there is no room for construction.

While the cause appears to have been tried upon the theory that the facts stipulated, were stipulated "for the purpose of this action"; and that such was the trial theory (see Marr v. Marr, 342 Mo. 656, 117 S. W. (2d) 230, 231), appellant now insists that "the surrounding circumstances existing at the time the executor executed the will should not be considered * * * and have no bearing in the interpretation and construction of this clause L." In view of the conclusions we have reached, it is unnecessary to review the facts stipulated, but if considered they would further support the conclusion already reached that Julia, the wife of Harry, was not only named and designated, but was clearly intended as beneficiary, and not appellant or any wife that might survive Harry as his widow. Appellant has no rights under clause L.

Appellant further contends that "this proceeding involves a legitimate dispute as to the distribution of income"; and that she is entitled to an allowance for reasonable costs and expenses of prosecuting this action including reasonable counsel fees. Appellant points to the fact that the trustees by answer joined in asking the court to construe the will of John Scullin to determine whether the words "to his wife" in clause L included plaintiff as the widow of Harry Scullin.

As stated, upon the written demand of appellant for a share of the excess income from the De'Gheest share, the trustees denied the claim, but did withhold distribution of an amount equal to the amount claimed. The mere fact that the trustees joined in a request for a construction of the will after appellant's action was brought does not entitle appellant to the allowances sought. Further, we have held that the will is not ambiguous or subject to construction. The trial court held that appellant's suit was for her own benefit and for the benefit of the trust estate and denied appellant's application for counsel fees and expenses. The issue was further raised in the motion for a new trial and again denied. No abuse of the trial court's discretion in ruling these matters appears from the record presented. Clark v. Mississippi Valley Trust Co., 357 Mo. 785, 211 S. W. (2d) 10, 18; St. Louis Union Trust Co. v. Kaltenbach, 353 Mo. 1114, 186 S. W. (2d) 578; St. Louis Union Trust Co. v. Kern, 346 Mo. 643, 142 S. W. (2d) 493, 500.

The judgment is affirmed. All concur.