CLARENCE M. BARKSDALE, Administrator Cum Testamento Annexo of the Estate of NORA MARY MORRIS, Deceased, Plaintiff-Respondent, v. THOMAS O. MORRIS, CATHERINE MORRIS SCHUCHAT, THOMAS O. MORRIS, JR., Defendants-Respondents, JULIA A. KOBS, JOHN L. KOBS, GEORGE H. KOBS, HARRY M. KOBS and MARJORIE BONITA POWERS, Defendants-Appellants, No. 42014—235 S. W. (2d) 288.

Division One, December 11, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, January 8, 1951.

*Oliver T. Remmers* for appellants.

*David Y. Campbell* for respondents Catherine Morris Schuchat and Thomas O. Morris, Jr.

[289] VAN OSDOL, C.—Appeal from a judgment and decree rendered in an action instituted by the administrator cum testamento annexo of the estate of Nora Mary Morris to construe the will of testatrix. The cause was originally appealed to this court but, it being determined that this court did not have appellate jurisdiction, the cause was transferred to the St. Louis Court of Appeals (224 S. W. 2d 84). The St. Louis Court of Appeals, by majority opinion, reversed the trial court's judgment and remanded the cause with directions to amend the decree. However, one of the members of the St. Louis Court of Appeals deemed the opinion to be in conflict with a previous decision of this court, and the cause was retransferred to this court for final determination (228 S. W. 2d 414). We will determine the cause as one properly here on original appeal. Section 10, Article V, Constitution of Missouri of 1945, Mo. R. S. A. Const. Art. V, § 10.

The ultimate question presented is whether the loss of assets of the estate of testatrix, due to the widower's renunciation of the will and his election to take and the consequent deduction of a widower's statutory allowances and dower, is to be divided equally between defendants-respondents (Thomas O. Morris, Jr. and Catherine Morris Schuchat, son and daughter of the widower Thomas O. Morris) and defendants-appellants (brothers and niece of testatrix), or whether the loss is to be wholly sustained by defendants-respondents.

The cause was submitted to the trial court upon stipulation of facts, which stipulation has been correctly and fully quoted by the St. Louis Court of Appeals in its majority opinion (228 S. W. 2d 414 at pages 415-417), and reference may be made to that opinion for a reading of the will and statement of the circumstances surrounding testatrix at the time the will was made.

In this opinion we will make reference to the facts as stipulated and to the provisions of the will as quoted in the opinion [290] of the St. Louis Court of Appeals; however, we deem it helpful to again set out herein the Fourth paragraph of the will, inasmuch as the Fourth paragraph is that primarily involved in the interpretation of the will. The Fourth paragraph is as follows,

"At the death of my sister, Julia A. Kobs, the estate is to be divided as follows:

"(a) One half to my husband, Thomas O. Morris, if he is living·at said time, otherwise in equal shares per capita to the children of my husband, Thomas O. Morris, Jr. and Catherine Morris Schuchat. If either Thomas O. Morris, Jr. or Catherine Morris Schuchat is not living at this time his or her share is to be paid to his or her children living at this time. If neither Thomas O. Morris, Jr. nor Catherine Morris Schuchat is living at this time, their descendants are to receive equal shares of this part of the estate, share and share alike.

"(b) One half to be divided equally among my brothers, John L. Kobs, now of Ashland, Kentucky, George H. Kobs, now of Buchanan, Kentucky, and Harry M. Kobs, now of Ashland, Kentucky, or unto the survivors or survivor. If all my brothers should be dead at said time, this one-half share shall be paid to my niece, Marjorie Bonita Powers, now of Indianapolis, Indiana."

The trial court by its decree determined it was the intention of testatrix that her estate should be held in trust to the use and benefit of her sister Julia for life, and the court appointed a trustee to receive and hold assets presently in the hands of the administrator and to administer the trust estate during the lifetime of Julia. The defendants-appellants find no fault with the trial court's decree in construing the will as creating a trust to the use of Julia during her lifetime; but defendants-appellants do emphatically complain of that part of the trial court's decree ordering that upon the death of Julia and after an accounting,

". . . the said trustee . . . shall pay and deliver to Thomas O. Morris, Jr. one fourth of the corpus of such trust estate remaining at that time and shall pay and deliver to Catherine Morris Schuchat one fourth of the corpus of such trust estate remaining at that time. If Thomas O. Morris, Jr. is not living at the time of the death of Julia A. Kobs, his one-fourth share shall be paid and delivered by said trustee to his children living at that time. If Catherine Morris Schuchat is not living at the time of the death of Julia A. Kobs, her one-fourth share shall be paid and delivered by said trustee to her children living at that time. If neither Thomas O. Morris, Jr. nor Catherine Morris Schuchat is living at the time of the death of Julia A. Kobs, their combined shares (one-fourth plus one-fourth, or one-half) in the corpus of said trust estate remaining at that time, shall be paid and delivered by said trustee in equal shares to their descendants . . .."

It is the contention of defendants-appellants that Thomas O. Morris, husband of testatrix (having renounced the will and elected to take his widower's share of the estate of testatrix under the laws of

Missouri), absorbed the half part of the estate the testatrix intended to bequeath and devise to him or to his son and daughter (or their children or descendants) upon the death of Julia as expressed in subparagraph (a) of the Fourth paragraph; and that the remaining entire half of the estate should go to defendants-appellants upon the death of Julia pursuant to subparagraph (b) of the Fourth paragraph. On the other hand, defendants-respondents say the law in Missouri is firmly established by this court's decisions "that the renunciation of the will by the surviving spouse cannot destroy an interest granted by the will to another legatee, which is limited to take effect upon the termination of the interest or estate provided for the widower or widow by the will, and which has been rejected" by a renunciation. Defendants-respondents cite Lilly v. Menke, 126 Mo. 190, 28 S. W. 643; Lilly v. Menke, 143 Mo. 137, 44 S. W. 730; St. Louis Union Trust Co. v. Kern, 346 Mo. 643, 142 S. W. 2d 493; Crossan v. Crossan, 303 Mo. 572, 262 S. W. 701; Borchers v. Borchers, 352 Mo. 601, 179 S. W. 2d 8.

[291] Did the renunciation and election by the husband render inoperative the alternative contingent remainder in his children (or their children or descendants)? It did, if testatrix so intended. Section 568 R. S. 1939, Mo. R. S. A. § 568.

"At the present time, there are a few well settled rules to be applied in the construction of wills, and these are so generally accepted that citation of authority is not needed to further establish them. The prime rule of construction is that the court, without attempting to make a new will or an equitable distribution of the estate, must confine its endeavors to ascertaining the real intent of the testator. To this end the will must be read from its four corners and effect given to all its plain provisions, provided, of course, they are not in violation of law. If there is doubt as to the proper construction of the will, after its own provisions and language are fully considered, then the court has the right, in aid of construction or interpretation, to consider the circumstances surrounding the testator at the time of making it." First Trust Co. v. Myers, 351 Mo. 899, 174 S. W. 2d 378.

We must admit we approach the review of this cause with temerity. Able jurists, trial and appellate, have disagreed upon the solution of the problem of the interpretation of the will of Nora Mary Morris (228 S. W. 2d 414). However, the mere casual reading of the will, which she herself wrote, tells us testatrix was a woman of ability with a high and finely balanced sense of responsibility to family.

For some reason (a good reason, in her judgment), of which reason we are not advised, testatrix felt she should assist her sister Julia throughout the sister's life; and she had a regard for her kindred of the blood. She honored her husband and his children and gave

to him or to them all of her furniture, jewels, books, pictures, clothing, automobile—all of her personal effects—and gave the net income from her estate to her sister Julia "for her lifetime" and she intended to give to her husband or his children (or their children or descendants) a remainder in half of her estate.

A careful reading of the will discloses that testatrix intended the net income from the *whole* of her estate (but, of course, not including her personal effects) should go to Julia; and that she intended that the whole of her estate, subject to possible encroachments upon the corpus thereof for stated needs of Julia, should be divided at the death of Julia—one half to her husband if then living, otherwise to the husband's children (or their children or descendants); the other half to be divided among her brothers (or the survivors, or to the survivor, or to her niece).

The husband's renunciation and election frustrated the intention of testatrix at least to the extent that her will could operate upon only an approximate half of her whole estate. The action of the husband in taking against the will reduced by half the corpus of the estate, the net income from which Julia was to have for life, and reduced by half the whole estate which whole the testatrix intended should be divided equally at the death of Julia. Now it is quite apparent that the husband, because of his renunciation and election, cannot take the half part of the estate in remainder which testatrix intended he should have if he were living at Julia's death, and which half testatrix intended the husband's children should have if the husband could not take in the possible event of his death before the death of Julia. Manifestly, testatrix intended to substitute the husband's children (or their children or descendants) as devisees of the one half of the whole estate only in the event the husband should not survive Julia, and the alternative (contingent) remainders in the husband and in the husband's children were intended to be operative upon the *identical* moiety of the estate of testatrix—one half of the whole estate. The husband by his action in taking against the will has received (and before the death of Julia) the equivalent in value of the moiety testatrix intended he or his children should have.

Obviously, if the contingent remainder in the husband's children (or in their children or descendants) is to be given any effect, it must become operative in part on [292] the half of the whole of the estate remaining after the husband's statutory allowances and dower are deducted.

While Thomas O. Morris by his renunciation and election acquired approximately half of the whole estate of testatrix and even before the death of the (equitable) life tenant Julia, sister of testatrix, he did not thereby receive half of the estate of testatrix by virtue of her will. He claimed and received that part of the estate of testatrix allowed to him by the laws of Missouri, which he had a

legal right to do. It is presumed the testatrix knew her husband could claim his statutory allowances and dower, but she did not expect him to do so. She made no provision for such an eventuality. And she bequeathed and devised to his children in the alternative the identical estate in quantum of interest in the same moiety of her property that she gave to her husband. Slightly more than half of her estate had been derived by inheritance from her mother; and, when the will was made, the income on the half so inherited had been and was being paid to Julia by testatrix with the consent of the husband. She had no reason to believe her husband would frustrate her plans to make provision for her sister Julia for life and to divide the whole estate in remainder equally between her husband or his children and her own kindred. She had no children of her own and it was but natural that she should give back to her own brothers the approximate amount she had inherited from the mother, especially inasmuch as the amount of the inheritance was but little more than equal to the half of her whole estate; and it was but natural that she should give to her husband the other half of her whole estate in remainder. He was her husband, and he had ably managed her inheritance and by his investments and reinvestments had increased the value of her estate. She gave his children no separate property or estate, nor did she give them any separate interest in any part of her estate whatsoever aside from that which she intended to give her husband if he were living at the death of Julia. She apparently had confidence in her husband's ability to manage and invest the half of her whole estate that she intended to vest in him, if living at the death of Julia, and testatrix had no reason to think her husband would not make appropriate provision for his own children, who were adults when she made her will. Only upon the eventuality of his death before that of Julia, did she make provision for his children. Now, as we have said, in giving consideration to such eventuality, testatrix did not bequeath and devise any separate, different or independent estate from that which she had devised to her husband. She gave to them in the alternative the identical half of her estate in remainder that she had contingently given her husband in remainder. In this manner, we believe, testatrix clearly indicated that she contemplated the contingent interest of the husband's children should be considered identical with the contingent interest of the husband, and which interest the husband has now rejected.

The instant case is differentiated from the case of Lilly v. Menke, supra, and from other cases noted supra as cited by defendants-respondents, and we believe the cases cited by defendants-respondents are not decisive of the instant action. For example, testator Ilett Tobbein in his will (126 Mo. at page 199, 28 S. W. at page 645) did not provide that the remainder to ''the legal heirs and representa-

tives'' of his wife was to be vested in property or a moiety thereof identical and identified with that in which he gave his wife a life estate, which life estate the wife rejected, and the remainder in fee to the legal heirs and representatives of the wife was an estate differing in quantity of interest and in no way substitutional to the particular estate for life devised to the wife.

In the case of Levin v. Safe Deposit & Trust Co., 167 Md. 41, 172 A. 605, the Court of Appeals of Maryland was confronted with a somewhat similar problem in the construction of the will of Abraham Levin who bequeathed and devised the residue of his estate in trust to pay the income to his wife until her marriage or death, and provided for a division into halves upon either of those events. After a remarriage, the payment of income to the [293] widow from one half was to be continued until her death, and the other half was to be held by the trustee until a brother of testator should become thirty years of age, when it was to be paid over to the brother with the income accumulated meanwhile. The will further provided,

''Upon the death of my said wife, said Trustee shall pay over, transfer and deliver one half of my entire trust estate, in the event she has not remarried, or the one-half share held in trust for her in the event she has remarried, to my wife's next of kin in such portions as my wife shall by her Last Will and Testament direct and appoint; but if my wife shall die without having exercised such power of testamentary appointment, then at her death the said Trustee shall divide and distribute the said share of the estate to her next of kin. And the other one-half share, in the event my said wife has not remarried, shall be retained by my said Trustee upon the same trusts as hereinbefore set forth in respect to the one-half share to be retained by it in the event my wife should remarry.''

The widow renounced the will, and took one half of all the estate. The reviewing court was of the opinion the widow's withdrawal of half of the property had deprived her next of kin of all benefit under the will, and left the interest of testator's brother unaffected. The question was, of course, solely one of intention. The court remarked that it is true the renunciation by a widow does not ordinarily cut off interests in remainder upon the termination of a particular estate in her (see again Lilly v. Menke, supra); but the Court of Appeals of Maryland further observed that this is true only because ordinarily it is not found to have been the testator's intention that the remainders should be so identified with the particular estate, and dependent upon its coming into effect. The testator's plan appeared to have been to divide his estate equally between two families, half to be taken by his wife and her people, half by testator's brother (and others of testator's own people). It was the same half that was to pass down to the remaindermen respectively. The court

pointed out the provision of the will that, if division should occur on a remarriage of the widow, then later, upon her death, it was "the one-half share held in trust for her in the event she has remarried" that was to pass to her next of kin, not an independent half share. Adherence to the testator's plan under the altered conditions required that the remainder in the widow's half should be held inoperative, the renunciation having the same effect as ademption of a specific legacy.

In the instant case, we are constrained to the conclusion that, having rejected the remainder contingently in him or his children in the half of the entire estate and having elected to receive the equivalent in value, the husband rendered inoperative the alternative remainder which might otherwise have become vested in his children.

The trial court's judgment and decree should be reversed in part and modified and amended so as to provide that the remainder of the estate of testatrix, the widower's statutory allowances and dower having been deducted, shall be distributed, at the death of Julia A. Kobs and after the trustee's accounting, to the three brothers of testatrix, or to the survivors or survivor, or if no survivor then to the niece, Marjorie Bonita Powers; and the judgment and decree should be otherwise affirmed.

It is so ordered. *Lozier* and *Aschemeyer, CC.*, concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.